NEVADA BANK OF SAN FRANCISCO v. PORTLAND NAT. BANK et al.

(Circuit Court, D. Oregon.   December 23, 1893.)

No. 1,996.

1. NATIONAL BANKS—LIABILITY FOR FRAUDULENT REPRESENTATIONS.
   A national bank is liable for fraudulent representations made by it through its cashier to another bank as to the financial responsibility of a customer.

2. SAME—FRAUDULENT REPRESENTATIONS—STATEMENTS OF FACT AND OPINION.
   Representations by one bank to another that a certain business corporation "is prosperous," "well organized," "doing a large business," and are "valued customers of ours;" that an investigation of its business and responsibility had been made by the vice president and cashier of the bank, coupled with the transmission of an annual statement, which (as alleged) is known to be false,—are representations of fact, and not of opinion, and are actionable if fraudulently made.

3. SAME.
   Fraudulent representations as to the financial responsibility of another for the purpose of procuring him credit are actionable, though containing no statement as to the amount of credit it is safe to extend.   Hopkins v. Cooper, 28 Ga. 392, and Glover v. Townsend, 30 Ga. 92, disapproved.

4. SAME—RECKLESS STATEMENTS.
   False representations concerning the financial responsibility of another, made, for the purpose of procuring him credit, negligently and carelessly, without investigation, when investigation would disclose their falsity, imply a fraudulent intent, and are actionable.

5. **SAME—STATUTE OF FRAUDS—SIGNATURE BY BANK CASHIER.**
   The signature of a bank cashier, with his official title appended, to a letter bearing the bank's name at its head, is the signature of the bank, within the meaning of a statute providing against liability for representations as to the credit, skill, or character of another, unless there is a memorandum thereof in writing, signed by the "party to be charged." 1 Hill's Code Or. § 786.

At Law.    Action by the Nevada Bank of San Francisco against the Portland National Bank and George W. Hazen to recover damages for false representations.    On demurrers to the complaint. Overruled.

Williams & Wood, for plaintiff.

R. & E. B. Williams & Carey and U. S. G. Marquam, for defendant bank.

J. V. Beach, R. G. Morrow, and B. B. Beekman, for defendant Hazen.

GILBERT, Circuit Judge.    The plaintiff brings an action for damages against the defendants.    It is alleged in the complaint that the Portland National Bank had for one of its customers the Ainslie Lumber Company, and that the company was indebted to the bank in the sum of $90,000, and was insolvent.    That the defendant Hazen, who was the cashier and acting manager of the bank, knew of the financial condition of said company, as likewise did the bank.    That, with intent to defraud the plaintiff, and to induce it to advance money to said company, thereby reducing the said indebtedness to itself, the Portland National Bank, by its said cashier, wrote to the plaintiff as follows:

"Portland National Bank.
                    "Portland, Or., 6-9-1892.
   "Mr. I. W. Hellman, Pres. Nevada Bank, San Francisco—Dear Sir: We take pleasure in mentioning very favorably to you the Ainslie Lumber Company.    They are valued customers of ours, and are doing a large business in this section.    The company is especially well organized in all its departments, and it is among the prosperous concerns on the coast.    We have handled quite a share of their business, and found all their obligations met promptly. The gentlemen in the management of the Ainslie Lumber Company are energetic, pushing people.
   "Yours, truly,                    Geo. W. Hazen, Cashier.
   "Your people will remember me as Ass't Cashier of the United States National Bank of Portland."

—That on the 10th day of June, 1892, in answer to a letter from the plaintiff to the Portland National Bank, addressed to its cashier, George W. Hazen, requesting information as to the standing and responsibility of said Ainslie Lumber Company, the said Portland National Bank, by its said cashier, addressed the following letter to the plaintiff's vice president:

"Portland National Bank.
                    "Portland, Or., 6-10-1892.
   "J. F. Bigelow, Vice Pres. Nevada Bank, San Francisco, Cal.—Dear Sir: Your favor of the 8th inst. is before me.    At the request of Mr. Wall, the secretary and treasurer of the Ainslie Lumber Company, I took the liberty

of addressing a brief letter to your president in reference to the Ainslie Lumber Company, and I presume Mr. Hellman will show you the said letter. The vice president of our bank, together with myself, made a thorough investigation of the business and responsibility of this lumber firm, and, upon our report to our board of directors, they extended a line of credit, which, in our estimation, the firm would have to be solid to obtain. Last December, Mr. Wall gave me a copy of their annual statement, which I herewith inclose. Would be glad to have you return it to me. I do not know what this lumber company asks of your bank, but feel safe in saying that I thoroughly believe they can and will do whatever they might promise you.

"Respectfully, yours,                    [Signed]  Geo. W. Hazen, Cashier."

—That the annual statement referred to in said letter showed assets amounting to $268,881.22 over and above all liabilities and debts of the said corporation. That at the time of sending said letter neither the vice president of the Portland National Bank nor the defendant Hazen had made any investigation as to the business or responsibility of said Ainslie Lumber Company, and said letter was written and sent to the plaintiff with intent to cheat and defraud the plaintiff; and that said annual statement was false and fraudulent, and was so known to be by the defendants; and that both of said letters were written and sent for the purpose of inducing the plaintiff to extend to said Ainslie Lumber Company a credit. That the plaintiff, relying upon said representations and upon that account, extended to said Ainslie Lumber Company a credit amounting to $21,905.82, all of which is lost to the plaintiff, and for which sum plaintiff demands judgment.

For a second cause of action, the plaintiff sets up the same facts that are contained in the first cause of action, but, instead of alleging the fraudulent knowledge and purpose of the defendants in writing said letters, it is alleged that the defendants made no investigation as to said Ainslie Lumber Company, and that the representations in said letters contained were carelessly and negligently made.

Each count of the complaint is demurred to upon the grounds: First, that neither the defendant bank nor its cashier had power to make such representations concerning the standing or credit of the Ainslie Lumber Company; second, the representations contain no definite statement of facts touching the credit of the Ainslie Lumber Company upon which an action could be brought; third, that no action can be brought upon said representations under the statute of frauds. The defendants contend that the defendant bank, which is a national bank, had not the power to assume a liability for its own error or mistake in certifying to the financial standing of a customer seeking credit at another bank. It must be conceded that it had not the power to assume such liability ex contractu, but in the case of a tort committed by the bank or its officers a different principle is applied. In such a case it is the rule that the corporation is liable for the negligence or other tort of its agents and servants, even when performing acts that are ultra vires. In the case of Merchants' Bank v. State Bank, 10 Wall. 604, the court said:

"Corporations are liable for every wrong of which they are guilty, and in such case the doctrine of ultra vires has no application. Corporations are

liable for the acts of their servants while engaged in the business of their employment in the same manner and to the same extent that individuals are liable under like circumstances."

In Bank v. Graham, 100 U. S. 699, 702, the court said:

"An action may be maintained against a corporation for its malicious or negligent torts, however foreign they may be to the object of its creation, or beyond its granted powers. It may be sued for assault and battery, for fraud and deceit, for false imprisonment, for malicious prosecution, for nuisance, and for libel."

The same doctrine is applied in the cases of Railroad Co. v. Derby, 14 How. 468; Railroad Co. v. Quigley, 21 How. 202; Etting v. Bank, 11 Wheat. 59; Bissell v. Railroad Co., 22 N. Y. 258.

It is argued that the defendant bank cannot be held liable to an action for the unauthorized or fraudulent representations of its agents; and that the cashier of that bank is not, from his mere position as such officer, authorized to make statements of the bank; and that, although the employment and official position of such officer may have given him the opportunity to make such statement, he may nevertheless have made the same as well when absent as when present at the bank. Authorities are cited which sustain this view. The language of the complaint, however, excludes this question from the discussion. It is alleged in the complaint (and for the purpose of this demurrer the complaint must be taken to be true) that the defendant bank itself made the representations, by its cashier, and that the letters were written and sent by the defendant bank. It is alleged that it was the purpose of the bank by the representations to secure an advantage to itself, and that one of the letters was written in direct response to a letter directed to the defendant bank. There is nothing in the language of the letters themselves which would tend to contradict these allegations. On the other hand, there may be found in the letters numerous expressions corroborative of the theory that they were written and sent by and on behalf of the bank, and as the act of the bank.

It is further objected that the language of the letters contains no statement of fact upon which an action can be brought, and that there is no definite information conveyed as to the property or means of the Ainslie Lumber Company, and no amount is stated for which its credit is said to be good. The general rule in regard to such representations is that they must be statements of fact, and not of opinion, and that the representations must be definite and certain in order to charge the defendant with liability. These letters contain the information that the Ainslie Lumber Company "is prosperous," "well organized," "doing a large business," that "they are valued customers of ours." The second letter contains as part of the representation the fact that the writer and the vice president of the defendant bank had made a thorough investigation of the business and responsibility of the company, and there is inclosed a copy of the company's annual statement, which shows assets of $308,057.75, and liabilities of less than $40,000. It is alleged in the complaint that this annual statement was known to be false when so furnished by the defendants. These representations so expressed

and so declared upon fully comply with the rule of law concerning such cases.

The cases of Hopkins v. Cooper, 28 Ga. 392, and Glover v. Townsend, 30 Ga. 92, are cited in support of the proposition that the representations are not actionable unless they indicate to a reasonable certainty the amount for which it will be safe to extend credit. As applied to the facts declared upon, the conclusion reached by the court in the first of those cases is undoubtedly correct, but the principle announced in both cases is not in harmony with the current of authority. In Boyd's Ex'rs v. Browne, 6 Pa. St. 310, the representation was that the party seeking credit was "a sober, industrious man, worthy of credit, and able to pay," and was held sufficient to sustain the action. In Addington v. Allen, 11 Wend. 374, the defendant was held liable upon a letter which stated in general terms that the person who sought credit was a merchant of some years' standing, and that any assistance given him in the way of buying goods would be thankfully acknowledged by the writer. In Tatton v. Wade, 86 E. C. L. 370, the representation was made concerning one who wished to rent apartments, and its purport was that the plaintiff "need be under no apprehension of his honesty," and that he "held a very responsible situation." In Kimball v. Comstock, 14 Gray, 508, the defendant was charged with having falsely and fraudulently represented of another that "he was possessed of a large amount of property and entitled to credit."

It is contended that action upon these representations is barred by the statute of frauds. Section 786, p. 594, 1 Hill's Code, provides as follows:

"No evidence is admissible to charge a person upon representation as to the credit, skill or character of a third party unless such representation or a memorandum thereof be in writing and either subscribed by or in the handwriting of the party to be charged."

This provision of the statute is, in substance, a reproduction of Lord Tenterden's act, (9 Geo. IV. c. 14, § 6.) The same or a similar statute has been adopted in several of the states, but it is believed that the provision therein expressed that the representation must be subscribed by the "party to be charged" is found only in the law of Virginia, West Virginia, Kentucky, Alabama, and Oregon. In England, Lord Tenterden's act has been construed to mean that the representation must be signed by the party himself, and may not be signed by an agent. Hyde v. Johnson, 3 Scott, 289; Clark v. Alexander, 8 Scott, N. R. 147; Williams v. Mason, 28 Law T. (N. S.) 232. The same construction is doubtless applicable to the Oregon statute.

It is argued that the signature of the cashier of the defendant bank, attached to the letters, is not the signature of the bank. The English case of Swift v. Jewsbury, L. R. 9 Q. B. 301, decided in 1874, is relied upon as giving that interpretation to the statute. In that case a letter had been written to the manager of a bank, requesting his opinion of the standing of one who was seeking credit. The answer was signed, "J. B. Goddard, Manager." The banking company had no knowledge that such letter had been written, and gave the manager no express authority to write the same. The company

was not a corporation. It was a copartnership, with certain privileges conferred by statute. It could sue and be sued only in the name of one of its public officers, and its members could not be made liable in respect to transactions with the company until a judgment had first been obtained against the company through one of its public officers. The decision of the court of queen's bench was that the signature of Goddard, the manager, was in fact and law the signature of the banking company; but, upon appeal to the court of exchequer, Lord Coleridge was of the opinion that the signature to the document upon which the bank was sought to be held liable was not signed by the party to be charged, and did not come within the terms of the statute. Instead of basing the decision upon that view of the law, however, he held that the decision of the queen's bench should be reversed upon the ground that, upon the language of the correspondence, there was no intention to consult the bank, but rather the manager thereof; and that the representation was made by Goddard himself of matters as to which he was pledging his personal knowledge only. Upon this ground the decision was concurred in by the remainder of the court. No American case is found which covers the point in question, but the tendency of the decisions in the states in which Lord Tenterden's act has been adopted has been to modify the protection which the statute affords to fraud by enforcing a strict construction of its provisions. Bush v. Sprague, 51 Mich. 41, 16 N. W. 222; Hodgin v. Bryant, 114 Ind. 401, 16 N. E. 815. I do not consider the opinion of Lord Coleridge in Swift v Jewsbury in harmony with this tendency of the American courts, or with the theory of the American law, in regard to corporations, and the general course of the transactions of banking business. A corporation can sign instruments in writing only by an officer or officers empowered so to do. In the usual course of the corporation's business the act of signing is not the act of an agent, but the act of the corporation itself. While formal documents are usually signed by the president and secretary, and further authenticated by the corporate seal, the corporation may nevertheless empower any officer to execute deeds or other instruments in writing. In banking corporations, most instruments in writing issued or indorsed by the bank are signed by the cashier. The letters of the bank, in its usual correspondence about business, are often, if not generally, signed by him. In Morse on Banks and Banking (section 162) it is said that it is the special duty of the cashier to conduct the correspondence of the bank. The name of the defendant bank stands at the head of both letters referred to in the complaint, and both are signed by the cashier, and his official title is appended. The question is not free from doubt, but I am inclined to the view that in a document of this kind, written under the circumstances detailed in the complaint, the signature of the cashier is the signature of the bank. It may be conceded that the bank would have the power to sign the letters in a different way. It can only append its signature, however, by some officer or agent, and the usual agent or officer to sign a written instrument is the cashier. The cashier, in this instance, not only had the usual powers incident to his office,

but it is alleged in the complaint that the issuance of and the signature to these letters were expressly authorized by the bank, and intended to express its own deliberate action.

In the second count of the complaint there is no allegation of fraud or fraudulent intent upon the part of the defendants in making the representations concerning the credit of the Ainslie Lumber Company, and the question arises whether the averment that the representations were made negligently and carelessly sufficiently states a cause of action. It is held in Kentucky that the statute of that state, which is substantially the same as the law of Oregon above quoted, embraces every case of false representation concerning the credit of another, except cases where a fraudulent intent exists; but that, in case the representations are fraudulent, the statute has no application, and an action may be brought, irrespective of its provisions. Warren v. Barker, 2 Duv. 156; Dent v. Mc-Grath, 3 Bush, 176. The same doctrine is held in Alabama. Clark v. Lumber Co., 86 Ala. 220, 5 South. 560. I am unable to agree with the reasoning upon which those decisions are based. The decision in Pasley v. Freeman, 3 Term R. 51, is generally understood to have prompted the enactment of Lord Tenterden's act. It was held in that case that a false affirmation made by the defendant concerning the credit of another with the intent to deceive and defraud the plaintiff is the ground of an action on the case in the nature of deceit, and that it is not necessary that the defendant's purpose should have been to benefit himself. This was supposed by some to be an evasion of the statute of frauds, in that it permitted actions upon verbal representations while prohibiting actions upon verbal promises to pay another's debt. By Lord Tenterden's act it was declared that representations concerning the credit of another should not be actionable unless in writing, and signed by the party making the same. What was the nature of the representations that were placed under the protection of the statute? They were obviously such as, prior to the statute, were actionable. There is no warrant for holding that the statute was intended to create a new cause of action, or to render representations actionable which before were not. The essence of the action after as well as before the statute was the fraudulent intent. In Allen v. Addington, 7 Wend. 10, reviewed on appeal to the court of error in 11 Wend. 374, it was held, after a careful review of all the authorities, that in an action to recover damages for false representations as to the credit of another the declaration must contain the allegations that the representations were made with an intention to deceive and defraud. In Russell v. Clark's Ex'rs, 7 Cranch, 69, Chief Justice Marshall said:

"That a fraudulent recommendation (and a recommendation known at the time to be untrue would be fraudulent) would subject the person giving it to damages sustained by the person trusting to it seems now to be generally admitted."

In Ewins v. Calhoun, 7 Vt. 79, and Weeks v. Burton, Id. 67, it is held that, where one acts upon false representations of another's solvency, and is damaged thereby, he has a cause of action against

the person making the same, if the latter knew them to be false. The same doctrine has been held in some of the states where Lord Tenterden's act has been adopted. Kimball v. Comstock, 14 Gray, 508; Mann v. Blanchard, 2 Allen, 386; McKinney v. Whiting, 8 Allen, 207; Whitten v. Wright, 34 Mich. 92. These decisions, and others in general harmony with them, while all declaring that there must have been a fraudulent intent, are not uniform in their definition of that intent. In Allen v. Addington it is held that the fraudulent intent may consist either in an interested design on defendant's part to benefit himself, or a malicious design to injure the plaintiff. In other cases it is held that any representation known at the time to be untrue is deemed fraudulent. In Lord v. Goddard, 13 How. 211, it is said fraud means "an intention to deceive. If there was no intention; if the party honestly stated his own opinion, believing at the same time that he stated the truth,—he is not liable in this form of action, although the representation turned out entirely untrue." But by the weight of modern authority it is held that the law imputes an intention to deceive in every case where one recklessly asserts that to be true which is untrue, and concerning which he pretends to have a knowledge which he has not. 1 Cooley, Torts, 501; Brooks v. Hamilton, 15 Minn. 31, (Gil. 10;) Lynch v. Trust Co., 18 Fed. 486; Caldwell v. Henry, 76 Mo. 254; Cooper v. Schlesinger, 111 U. S. 148, 4 Sup. Ct. 360. Of this class is the cause of action contained in the second count of the complaint. It is there alleged that the representations were false; that they were made for the purpose of gaining credit for the Ainslie Lumber Company; that they were negligently and carelessly made, without examination or investigation; that, if investigation had been made, the untruth of the facts represented would have been made apparent.

These allegations sufficiently state a cause of action, and both the demurrers are overruled.