FIRST NATIONAL BANK, APPELLEE, V. EXCHANGE BANK OF ONG, APPELLANT.

FILED NOVEMBER 14, 1911. No. 16,970.

Corporations: LIABILITY FOR ACTS OF AGENTS. Where a corporation accepts and retains the fruits of a transaction induced by the fraudulent representations of its agent, made by him while acting within the scope of his authority, it is liable to the party injured thereby.

APPEAL from the district court for Clay county: LESLIE G. HURD, JUDGE. Affirmed.

S. W. Christy, L. E. Cottle, Samuel Rinaker and A. H. Kidd, for appellant.

A. C. Epperson and Culver, Phillip & Spencer, contra.

ROOT, J.

This is an action to recover the purchase price of a negotiable promissory note bought by the plaintiff from the defendant in reliance upon alleged false and fraudulent representations made by its cashier. The plaintiff prevailed, and the defendant appeals.

The plaintiff, a national bank, maintains its principal place of business at St. Joseph, Missouri, and the defendant, a state bank, maintains its principal place of business at Ong, Nebraska. In September, 1908, the plaintiff was one of the defendant's correspondents. During the times hereinafter mentioned, Messrs. J. O. Walker, J. A. Walker, M. Bolton and R. Tweed were the defendant's directors. J. O. Walker was the son of J. A. Walker, and was the cashier and general manager of the bank; J. A. Walker was the president of the corporation. Neither Bolton nor Tweed resided in Ong.

Eugene McCann, hereinafter referred to as McCann, was a grain dealer in the village of Western. The deposition of Mr. McCann was introduced in evidence, but he, as well as the Walkers, departed this life before this case

18

was tried. The Walkers' depositions were not taken. In 1908 McCann, to the knowledge of J. O. Walker, was insolvent, and had been for years previously. In March, 1908, the defendant's directors instructed J. O. Walker not to permit McCann to overdraw his account, and to "wipe out his overdraft on the book." The amount of this overdraft does not appear in the evidence. At a subsequent meeting of the directors in August, like instructions were repeated to the cashier. September 1, 1908, the president and cashier interviewed McCann at Western, and urged him to borrow money from whomsoever he could, so as to pay the bank and yet continue business, and he was requested to give his note to take up his overdraft. It is not clear whether a note was given at that time, but four days later, September 5, 1908, McCann received a letter written upon one of the defendant's letter-heads, signed "J. O. Walker, Cashier," inclosing a note for $7,500, payable to J. O. Walker, with a request that he sign and return it. The note was signed by McCann and by his wife and returned to the cashier. According to the defendant's books, McCann's account, on August 22, was overdrawn $5,170.82; by September 1 the overdraft was reduced to $1,270.82, and the overdraft was further reduced to $500.82 by the 7th of the month. September 9 and 10 the account was credited $1,250, and charged $6,000, leaving an overdraft of $5,250.82; $2,000 at least of this $6,000 represented McCann's checks presented to the defendant for payment, in the absence of J. O. Walker, and protested by the assistant cashier. McCann's pass-book is credited with his note September 9, 1908, but the defendant's books show no credits on that account until September 11, on which day McCann was credited $7,500, and the plaintiff charged the same amount. The note, however, was not offered to the plaintiff until the 19th of September, on which day it was received in a letter dated September 18, 1908, which is as follows: "The Exchange Bank of Ong. Capital, $25,000. Surplus and profits, $50,000. Ong,

Neb., Sept. 18th, 1908.    First National Bank, St. Joseph, Mo.    Gentlemen: I have had some quite large land deals on hand recently; and I will be required to need some money, and I enclose you a note that I hold well secured, that I have guaranteed payment thereon bearing date September 5th, 1908, and due January 1st, 1909, this is A1 paper, and I think that my indorsement on same will make it secure, if you can handle this note for me, you can credit the Exchange Bank of Ong, Nebr., for my use. Most of these land deals will be closed up by the middle of Dec. and the note will be taken up by the time same matures. Please let me hear from you in regard to this matter. Would like to attend your tournament, & will if business will permit me to be absent for a few days. We are very busy, at present. Hoping that you can grant this request, I am, Yours truly, J. O. Walker, Cashier."

The plaintiff purchased the note, and gave the defendant credit for $7,500, which was subsequently withdrawn by drafts drawn by the defendant on the plaintiff in the usual course of business. The evidence fairly establishes the fact that J. O. Walker, in September, 1908, although possessed of considerable property, was insolvent, and the McCanns were entirely so. Subsequent to J. O. Walker's death, the plaintiff discovered that the note was of but little value, and after an investigation offered to return it to the defendant, and requested the repayment of the $7,500, with interest.

The defendant, among other things, contends that the transaction was between J. O. Walker, on his personal account, and the plaintiff; that he had no authority to purchase or negotiate the note for it, nor any authority to make false representations to the plaintiff; that it is not a party to the instrument, and cannot be held liable thereon, and that no false representations were made by Walker. Without specific reference to the evidence, we are content to say that the proof is clear that the note was not A1 or well secured, and that, had the plaintiff known the truth concerning the financial condition of the

McCanns and of J. O. Walker, it would not have purchased the paper.

This is not an action upon the note, and therefore the cases cited to sustain the argument that one not a party to a negotiable instrument cannot be sued thereon are not in point. While the right to recover is predicated upon the cashier's alleged fraud, the action is to recover back the consideration paid, and is in the nature of an action for money had and received.

The evidence, as we understand it, is uncontradicted that the defendant owned the note before it was transmitted to St. Joseph. It was made and delivered in response to the request of both the president and the cashier that McCann give a note to take up his overdraft, and McCann testifies that, while it was his custom at times to execute notes payable to J. O. Walker, the bills were uniformly for the benefit of the defendant bank, and that the note involved in this inquiry was given to the payee for the bank. Negotiable notes are used as money, and the particular note was credited to McCann's account on the defendant's books before it was negotiated. It is true that on September 5, McCann's overdraft was but $500, but there is no proof that he knew that fact; his checks and drafts upon the bank had been issued and were outstanding for a much greater sum; in fact, the assistant cashier testifies that while the Walkers were in Western he protested two of McCann's checks for $1,000 each. McCann's pass-book shows a credit of $7,500 September 9, but he says that he was entitled to credit on a much earlier day. The credit was not given on the defendant's ledger until September 11, on which day it was charged to the plaintiff's account. The note was not entered on the defendant's discount register, but it was accepted by the cashier in payment for McCann's debt to the bank, and as a basis for credit which was subsequently exhausted by checks drawn in the usual course of business. McCann was not credited with the proceeds of the sale of this note, but with the note itself. We are

of opinion that the evidence sustains the district court in its finding that the note, when negotiated, was the defendant's property.

This brings us to the defendant's argument that it did not authorize J. O. Walker to make any false representations, and that it should not be held liable for what he wrote. It is true that the cashier's office did not carry with it authority for its occupant to make fraudulent representations, and that the defendant did not authorize him to make them; but, if those representations were made while he was acting for his principal and for its benefit, it cannot escape responsibility while retaining the fruits of his unlawful conduct. *Mackay v. Colonial Bank*, 22 Weekly Rep. (Eng.) 473; *Nevada Bank v. Portland Nat. Bank*, 59 Fed. 338; *Merchants Bank v. State Bank*, 10 Wall. (U. S.) 604, 645; *Fairchild v. McMahon*, 139 N. Y. 290. So it seems to us the inquiry is not so much into the authority vested by law and the by-laws of the defendant in, or the instructions of its directors to, J. O. Walker, as it is concerning for whom he acted when he wrote the letter of September 18 to the plaintiff; whether the plaintiff had a right to and did rely on the statements therein contained; whether they were false; and whether the defendant received and retains the fruits of that transaction. All of these issues were by the district court found against the defendant, and the record amply sustains its action. The defendant's liability follows as an inevitable conclusion of law. What has been said renders unnecessary a discussion of the other points argued in the briefs and at the bar.

The judgment of the district court, therefore, is

AFFIRMED.

SEDGWICK, J., dissenting.

1. When Walker took this note, as between himself and the Bank of Ong, the note clearly belonged to Walker, and not to the Bank of Ong. He had been instructed by the directors to take McCann's note for the balance he

owed the bank. McCann owed the bank only $500. Contrary to those instructions, and without the knowledge or consent of the bank, Walker took McCann's note for 15 times that amount, and gave McCann an additional credit for the full amount. This was in violation of the direct and positive. instructions of the bank. He never had authority to take a note from McCann for anything more than McCann owed the bank upon the books. His action in giving McCann credit for the amount of the note for his own purposes, and without the knowledge or consent of any of the directors, would not change the right of the thing as between him and the Bank of Ong. Walker was named as payee in the note in his personal, individual capacity, and not as cashier. As the payee in the note, his unrestricted indorsement was on the back. Therefore the form of the contract, as well as the conduct of Walker, would enable the Bank of Ong to insist that as between Walker and the bank, the note was the property of Walker, and not of the bank. His letter transmitting the note for sale declares himself to be the owner of the note, and would certainly estop him to deny that fact in any controversy between himself and the Bank of Ong. Certainly, if the controversy was between Walker and the Bank of Ong, the note belonged to Walker, and he cannot claim that it belonged to the Bank of Ong.

2. The question in this case, therefore, is whether the St. Joseph bank had notice of the real ownership of the note, or whether that bank had just grounds to believe, and did believe, that the note was the property of the Ong bank, and that when it was negotiating with Walker it was negotiating with the Bank of Ong. Without doubt, the decision of this case depends upon that question. The reasons for saying that the St. Joseph bank understood that it was dealing with the Ong bank, and not with Walker personally, appear to be two: First, that the letter transferring the note was written upon the stationery of the bank; second, that the letter was signed "J. O. Walker, Cashier." I think it will not be considered that

the fact that the letter was written on the stationery of the bank is entitled to very much consideration. Walker undoubtedly did use the stationery of the bank in transacting his personal and individual business. Everybody would expect that. Is the fact that the letter was signed "J. O. Walker, Cashier" sufficient to justify the bank in concluding that it was dealing with the Ong bank, and in concluding that the note was the property of the bank, and not the property of Walker? If we remember that the payee named in the note was J. O. Walker, and that it was indorsed "J. O. Walker," and nothing on the note indicated that anyone else was interested in it, and then read the letter in which the note was transmitted to the St. Joseph bank, it would seem that there is no difficulty in determining whether the St. Joseph bank supposed that the note belonged to the Ong bank, or supposed that it belonged to Walker, and that they were dealing with Walker personally. The letter seems to me to be as plain and positive notification that the note did not belong to the bank, and was the property of Walker personally as our language could make it. The pivotal sentence in the letter is, "If you can handle this note for me (J. O. Walker), you can credit the Exchange Bank of Ong, Nebr., for my (J. O. Walker's) use;" that is, if you buy this note of me, you can transmit me the proceeds by crediting it to the Exchange Bank of Ong, and I will take the money from the bank and use it. Note, also: "I think that my indorsement on same will make it secure." Would the Bank of St. Joseph understand from that that the Bank of Ong was to be responsible for it, or was it the indorsement of J. O. Walker that they relied upon? The letter is a series of similar positive statements that the note belonged to him personally, and was not the property of the bank. If I sell a note to the bank, I instruct them how to send me the money. This Walker did. "If you can handle this note *for me,* you can credit the Exchange Bank of Ong, Nebr., *for my use.*" He distinguishes between himself and the Bank of Ong, and

tells them that they are handling the note for him and the money is his, the Bank of Ong being merely the conduit for transferring his money to "my (Walker's) use." If the St. Joseph bank had not been satisfied to take the note from Walker, relying upon his indorsement and his representations as to his purchases of real estate and as to his personal responsibility, it should, and no doubt would, have required something to indicate that the Bank of Ong was interested in the transaction. If, as between Walker and the Bank of Ong, the note belonged to Walker and not to the bank, and the St. Joseph bank had notice of that fact, I do not see how they can now hold the Bank of Ong for the loss.

FAWCETT, J., concurs in this dissent.