# H. D. Sojourner & Co. *v.* Joseph *et al.*

(Division B.  Oct. 16, 1939.)

[191 So. 418.  No. 33828.]

756

M. S. McNeil and McNeil & Zama, all of Hazlehurst, for appellant.

Howie, Howie & McGowan and Hamilton & Todd, all of Jackson, and Hunter Garth, of Hazlehurst, for appellee.

**McGowen, J.,** delivered the opinion of the court.

H. D. Sojourner & Company, a partnership composed of H. D. and H. F. Sojourner, brought an action of fraud and deceit against Albert Joseph and Albert Karam. The action was based on alleged fraudulent representations made by Appellant Joseph to Sojourner as to the financial standing of Karam and the Karam Produce Company. An issue being made up, the case was presented to the jury, and a verdict returned in favor of the defendant Joseph, and the Sojourners prosecute an appeal here.

We shall only state such evidence as we deem material to an understanding of the case. Sojourner and Company were merchants at Hopewell, in Copiah County, Mississippi, dealing in and shipping carload lots of vegetables and in selling goods.

On Sunday afternoon, June 6, 1937, Albert Joseph, with some of his female relatives, accompanied Albert Karam from Jackson, Mississippi, to Hopewell, driving in what

was supposed to be Karam's Lincoln Zephyr Automobile. They stopped at Sojourner's place of business, where Joseph introduced Karam to Sojourner; and according to Sojourner, this occurred and was said: A. "Well, he introduced me to Karam and said he was representing Karam Produce Company of Chicago, Illinois. That they were all right and that Karam Produce Company was all right and perfectly solvent." Joseph further said to Sojourner in Karam's presence that the latter "was going to buy Mississippi tomatoes;" and he wanted Karam "to buy them from the Sojourner boys." Sojourner had full confidence in Joseph's honesty, integrity, and financial standing; had been buying merchandise from Joseph for about five years, and knew Joseph had a splendid financial rating.

On Tuesday, June 8th, thereafter, Karam appeared at the Sojourners' place of business and wanted a carload of tomatoes. Sojourner did not have them. On Wednesday, the 9th, he (Karam) again appeared and wanted a carload of tomatoes which Sojourner sold to him and shipped, Karam promising (Sojourner) to have the money in a certain bank to pay therefor on the follow morning. On Thursday morning, on being informed that the money for the tomatoes was not in bank, Sojourner testified that he called Albert Joseph over the telephone and said over the telephone to him: " 'Mr. Joseph I have already sold Karam a car of tomatoes yesterday and he promised us he would wire the money this morning and he has not done it.' I says, '. . .—where can I find him rated in the Rating Agency? I don't want to get mixed up with this fellow.' He said, 'Yes, sir, he is and Karam Produce Company are all right, perfectly solvent, can buy anything they want to,' and he taken the telephone away from his ear and said 'just a minute' and he talked, I think he was talking to Karam at that time . . .' 'And he (Joseph) come back and said "he wants a couple cars today" and asked if I would have them . . . and I told him I would let him (Karam)

have them.' '' After this conversation, between the 10th and 14th of June, Sojourner sold to Karam six cars of tomatoes. Sojourner began an investigation which developed that there was no Karam Produce Company in Chicago, Illinois, and that Karam was a criminal. He recouped his loss on his tomato transactions to some extent, and sued Joseph on the above representations for slightly in excess of $4,000.

Sojourner testified several times, as setforth in the the record, that he made these sales of tomatoes solely on the representations made by Joseph. There was some corroboration of Sojourner's view of the representations, Joseph denied making any representations, and denied that he talked at all with Sojourner on that date over the telephone, and was corroborated. In rebuttal, several witnesses testified to a substantial admission by Joseph of the telephone conversation.

On appeal here, the errors complained of are the following instructions granted by the court to Joseph:

"No. 1. That in weighing the testimony of any witness or witnesses who have testified in this case, you may take into consideration the previous criminal record of such witness, or witnesses."

"No. 2. That unless you believe from a preponderance of the evidence in this case that the plaintiffs relied solely upon the statement·of A. Joseph as to the financial condition of Karam, or the Karam Produce Company, and that except for such statement by A. Joseph, the Plaintiff's would not have made sales of tomatoes to Karam, or the Karam Produce Company, then you shall find for the defendant, A. Joseph."

"No. 3. That if you believe from the evidence in this case that Albert Karam represented himself to the plaintiff as being a representative of the Karam Produce Company, and that he and the Karam Produce Company, were able to pay for any tomatoes that he might buy, and that on this the plaintiffs sold to him tomatoes, then you cannot find a verdict against the defendant, Albert Joseph."

"No. 5. If you believe from the evidence that Sojourner sold one car of tomatoes to Karam Produce Company and Karam failed to pay for same as agreed upon, and that then the plaintiffs looked up the rating of Karm Produce Company and found that they were not listed in the credit book and had no credit standing, according to their Blue Book, then in that case the plaintiffs had no right to look to Joseph for the balance of any tomatoes thereafter sold to Karam Produce Company, or Albert Karam, then it was their duty in order to protect themselves to have been diligent and used every reasonable care to have ascertained the true financial condition of Karam Produce Company and Albert Karam before making any further sales on credit, and if they failed to do this, then you must find for the defendant, A. Joseph, as to any car after the first car."

Appellee, Joseph, insists that he was entitled to a peremptory instruction and therefore errors, if any, in the instructions granted to him, should not be considered. We are of the opinion that there is no merit in this contention, as to whether the representations were made or not, was in sharp conflict, and was a question for the jury.

The fact that it was developed shortly after these transactions that Karam was a criminal, largely engaged in criminal operations in fifteen states, and had been arrested about one hundred times, and had been sentenced by the courts of two states to serve a term in the penitentiary, does not absolve Joseph from the introduction of Karam to Sojourner as being a representative of the Karam Produce Company, and as being financially able to pay for all the tomatoes he would buy; but was a statement made by Joseph of fact which he, Joseph, represented to Sojourner that he knew, when in truth and in fact he knew nothing of Karam, and had not met him until the day or day before he introduced Karam. He (Joseph) recklessly, on Sojourner's version, assumed the attitude of knowing the financial condition and standing

of Karam; and if he made the statement under the circumstances we have detailed, there is no question of liability.

(1) It is true that scienter is a necessary requisite and a condition precedent to a recovery on such false representations as is here involved, but what amounts to proof of scienter was clearly settled in the case of Vincent v. Corbett, 94 Miss. 46, 47 So. 641, 643, 21 L. R. A. (N. S.) 85, in the following approved language from another court: "To make a party liable in an action at law for false representations, it must be shown that he made the representations with actual knowledge of their falsity, or without knowing whether they were true or false, or under such circumstances that he ought to have known that they were false, whether he did or not." The jury could have well found in this case, if it had adopted Sojourner's version of the facts, that Joseph made the statements, recklessly, and without regard to their truth or falsity; or that the statements were made by Joseph as of his own knowledge, when he was without knowledge; or, when in consideration of its position, he should have known of its truth or falsity, before he spoke as one having knowledge.

(2) It is complained of instruction no. 2 that the jury were informed that if they did not rely solely upon the statement of Joseph, the defendant was entitled to a verdict.

It is true that the general rule on this subject is clearly stated in 26 C. J. 1165, 1166, as follows: "It is not essential to redress that a representation or concealment should have been the sole cause of action, but it is sufficient if it constituted one of several inducements and exerted a material influence. In such a case recovery may be had, although the representation was not the predominating inducement to action or the representee's injury was due partly to his own mistake. Thus, where the representation was a material inducement to action, recovery may be had, although the injured party was

influenced to some extent by the statements of third persons or by information gained through independent investigation, or relied in part upon other representations of the speaker which were not actionable in themselves, because true, of a promissory nature, or within the statute of frauds, or where the hearer relied partly upon representations and partly upon a guaranty. The foregoing rule with its accompanying qualifications has been applied to representations concerning financial standing.'' However, there are two obvious answers: (a) In about three places in the record, Sojourner positively testified that he made the sale of tomatoes solely, wholly, or entirely upon his reliance of Joseph's statements or representations. This instruction was justified by Sojourner's evidence. (b) The appellant, in its instruction, number 4 in the record, used practically the same language with reference to the liability of Joseph, so that, in the state of the proof, the instruction was not erroneous.

It is very probable that what Karam said, after Joseph's splendid commendation of his financial ability, made some impression on Sojourner. It is also probable that had not Joseph. made these representations, he would have ignored any statements made by Karam. However, the statements, as quoted, under the circumstances, appear to be a moving material inducement in bringing about the transactions between Karam and Sojourner.

(3) We think that instruction no. 3 was calculated to mislead the jury, in that it advised the jury that if Karam had represented himself to be the agent of the Karam Produce Company, and that it (the produce company) was able to pay for tomatoes, and that on this assurance the tomatoes were sold, then a verdict could not be found against Joseph. This statement should have been qualified on the verbiage of the instruction by the words: ''Provided, Sojourner did not rely upon the original statements made to him by Joseph.'' What the

words, "and on this," in this instruction meant is subject to considerable doubt. The instruction might have meant that if he relied solely on the statement of Karam, then, Joseph was not liable. The instruction was not clear and was calculated to mislead the jury.

(4) As to instruction no. 5, we are of opinion that it cannot be justified on the record in this case, and that it was tantamount to a peremptory instruction for Joseph. Sojourner's version of the telephone conversation between him and Joseph was the strongest representation in the record.· It allayed any suspicion aroused in Sojourner's mind as to the solvency of Karam. Not only did that conversation allay his suspicion as to the past sale, but negotiations for future sales were instituted by Joseph, according to Sojourner's view of it. Sojourner was looking for further information. He did not find Karam Company listed in the blue book. He therefore inquired of the man who knew Karam, as to his company's and his financial standing; and, if the jury believed that this telephone conversation occurred, certainly, Sojourner had a right to rely upon it. His further investigation, when his tomatoes had not been paid for as promised, was made and completed, and that telephone representation as to Karam's solvency relieved Sojourner from further investigation. Of course, the representations made by Joseph, if they were made to Sojourner, did not make Joseph an insurer of Karam's solvency, but, under the circumstances,. Sojourner had a right to rely upon Joseph's statement as of his own knowledge of the solvency of the party about whom he was inquiring. As was said in the case of Nash Mississippi Valley Motor Company v. Childress, 156 Miss. 157, 125 So. 708, 709: "Contributory negligence is not a defense to an action based on fraud. If a false statement is made by one who may be fairly assumed to know what he is talking about, it may be accepted as true, without question and without inquiry, although the means of correct information are in reach."

(5) It is said that instruction no. 5 is error as being upon the weight of the evidence; and that Karam was a witness in the case. Karam appeared as a witness in his own behalf, and conducted his own case. He was not proffered as a witness by either Sojourner or Joseph, but he did corroborate Sojourner. He admitted his criminal record, partly detailed by us under the statement of facts, that he had been sentenced to serve a penitentiary term in two states, and had been paroled therefrom. The instruction was perhaps erroneous, but we would not reverse the case because the parties to this litigation now before us, and Karam as well, all admitted the criminality of Karam.

The granting of instruction no. 5, procured by the defendant, was fatal error to the verdict in this case.

Reversed and remanded.