56 So.2d 895 (1952)
FORBES et al.
v.
AUERBACH.
Supreme Court of Florida, Division B.
February 5, 1952.
Rehearing Denied February 21, 1952.
Franks & Gordon, Miami, for appellants.
Hudson & Cason, Miami, for appellee.
CHAPMAN, Justice.
The Emancipator Boat Company, Inc., a corporation, was organized under the laws of the State of Florida with its principal place of business situated in Dade County, Florida. It was organized to build, construct or manufacture certain described boats which were offered for sale throughout the United States and Canada. S. Mortimer Auerbach owned and operated this boat manufacturing business prior to the organization of the corporation in 1946. Lela B. Auerbach, wife of S. Mortimer Auerbach, and Sidney Wasserman owned a share each, but 98 per cent of all the stock of the corporation was owned by S. Mortimer Auerbach. He was President of the corporation and Chairman of the Board of Directors. All of its business affairs were at all times under the supervision, control and direction of its President, S. Mortimer Auerbach.
The officers, directors and stockholders of the Emancipator Boat Company, Inc., held a meeting on September 30, 1949, and adopted a resolution by the terms of which it was admitted that the Emancipator Boat Company, Inc., was insolvent and unable to further conduct and finance its business operations. At said meeting it further authorized its President and attorney to prepare, sign and cause to be filed in the Bankruptcy Court such documents as were necessary to show the consent and approval of the officers and all the stockholders for the entry of an appropriate order adjudging the Emancipator Boat Company, Inc., a bankrupt under the Acts of Congress relating to bankruptcy. All of said proceedings were carried out and, on October 14, 1949, the Emancipator Boat Company, Inc., was by an appropriate order duly adjudged a bankrupt.
The plaintiffs-appellants, prior to the month of October, 1948, were the owners and operators of a lumber business and yard and engaged in business under the partnership name of 62nd Street Lumber Company. It is not disputed on this record that the Emancipator Boat Company, Inc., was indebted to the 62nd Street Lumber *896 Company as of October 26, 1948, in the sum of $9,569.06 for a given quantity of described lumber delivered in the course of business prior to October 26, 1948, to the Emancipator Boat Company, Inc. by the 62nd Street Lumber Company.
The record reflects that the plaintiffs-appellants sold and delivered lumber on open account to the Emancipator Boat Company, Inc., in a sum approximating $3,000. A payment thereon was made in the sum of about $1,000. Additional deliveries were made until the amount due on the open account approximated $5,000. Plaintiffs-appellants were at this point in doubt about extending the Emancipator Boat Company, Inc., further or additional credit in excess of the amount of the open account of $5,000, but hearing of or observing a financial statement made by S. Mortimer Auerbach, President of Emancipator Boat Company, Inc., under date of March 29, 1948, to Dun & Bradstreet, Inc., a credit rating corporation, caused the plaintiffs-appellants to change their position and, after seeing the report, did extend an unlimited amount of credit to the Auerbachs' corporation, the Emancipator Boat Company, Inc., because of this favorable commercial rating of the Emancipator Boat Company, Inc.
Pertinent portions of the commercial report of Auerbach, president of Emancipator Boat Company, Inc., made to Dun & Bradstreet, under date of March 29, 1948, are as follows:
 "Dun & Bradstreet, Inc.
 "Rating Change
 "CD 196 March 29, 1948
"Emancipator Boat Co., Inc. Mfr Boats Miami, Fla
 Dade County
 7910 Little River Road
"S. Mortimer Auerbach, Pres. & Treas. Mrs. Lela B. (S. Mortimer) Auerbach,
"Sidney Wasserman, Secty. Vice-Pres.
Rating: C 2 to C 2½

"Synopsis
"Background: Incorporated December 30, 1946 succeeding a proprietorship operated by the President. The principal has extensive experience along this line.
"Net Worth: $279,900 (including business real estate) Sales:
"Payments: Prompt to slow. $50,000 (Jan. 1, 1947 to June 30, 1947)
"Condition & Trend: Good investment represented in the business, however, difficulty experienced in retiring obligations. Sales volume is reported active.

"History
"This is a Florida corporation chartered December 30, 1946 and succeeding a proprietorship operated by the principal. Auerbach is 48, married, and has been coming to Miami in winter since 1928. Located in Atlantic City, N.J. at 801 N. New Hampshire Ave., however, since 1938 has had a place of business at 7910 Little River Road, Miami, Fla. He is a son of Judge Emil Auerbach of Atlantic City and Chicago. S. Mortimer Auerbach is the principal stockholder in Mendel Bros., large department store in Chicago. He has not been commercially active, however, and has spent most of his time in building and racing speed boats. At one time he used to trade style of Southern Marine Co., later Emancipator Enterprises, and traded as Emancipator Boat Co. (Not Inc.) from 1942 until Dec. 30, 1946 when company was incorporated.
"Lela Auerbach, wife of the principal is 48 and a native of Indianapolis, Ind. This is her first venture in business and she represents no financial interest in the company, appearing for purposes of law only.
*897 "Sidney Wasserman, age 43, Married, is a native of New York City. A graduate of New York College, he arrived in Miami in 1938 and by profession is a certified public accountant. He also appears only for purpose of law and represents no financial interest in the company.

"Method of Operation  Fire Hazard
"Manufacture a boat known as the 26 Foot Emancipator Express Cruiser and these boats are sold are wholesale to dealers located throughout the United States and Canada. The company formerly did repair work, storage, and maintenance on private and commercial craft. These operations were lately discontinued. For the manufacture of boats a modern well equipped plant is maintained with adequate storage and dockage facilities. S. Mortimer Auerbach has the active management and at the present time the corporation is manufacturing five boats per week and employs between 100 and 110 men. "Owns the one-story concrete fireproof building containing 32,000 square feet of floor space. The building is in good repair and well maintained. The location is on a paved street in a few feet from a heavily traveled street in the Little River section of Miami, immediately adjacent to the river. The property is accessible at all times and is within 500 yards of fire protection.
"Fire Record: In March 1936, a boat known as the Emancipator was totally destroyed by fire, due to a crossed wire, while being towed in the bay, from docks where it has to undergo repairs. Loss of $2,300 was covered by Insurance.

"Statement
"On March 26, 1948, S. Mortimer Auerbach, President and Treasurer, stated that a detailed financial statement was not available at this time, the latest financial information on hand is from estimates of June 30, 1947 as follows:

 Assets Liabilities
Cash on hand $ 100.00 Acct. Pble. $ 2,500.00
Cash in bank 10,000.00
Accts. Rec. 2,300.00
Merchandise 10,000.00
 ___________
 Total Current 32,400.00 Total Current 2,500.00
Mach., Fixts., Real
 Estate & Bldg. 250,000.00 Capital Stock
 & surplus 279,900.00
 ___________ ___________
 Total Assets 282,400.00 Total 282,400.00
Net Sales $50,000. (Jan. 1, 1947 to June 30, 1947)

 (Signed) July 7, 1947
 Emancipator Boat Co., Inc.
 (By) S. Mortimer Auerbach, President."
It further appears by the record that S. Mortimer Auerbach, as President of the Emancipator Boat Company, Inc., on November 8, 1948, executed and delivered to the 62nd Street Lumber Company its three promissory notes to cover the amount due by it for lumber previously received, and these notes became due and payable 30, 40 and 60 days after November 8, 1948. The notes were not paid and some few months after maturity the Emancipator Boat Company, Inc., was adjudged a bankrupt under the Acts of Congress relating to bankruptcy. Mr. Auerbach admitted on the witness stand that the 62nd Street Lumber Company had supplied him and his boat *898 company with lumber. He wrote the lumber company a letter concerning the account under date of January 25, 1949.
The evidence discloses that a representative of Dun & Bradstreet called upon S. Mortimer Auerbach, as President of Emancipator Boat Company, Inc., for the purpose of obtaining from him a written statement as to the financial status of Auerbach's boat company. Some time was consumed in obtaining the details incident to the financial report of the company, but the same were ultimately placed in the form as above set out, when S. Mortimer Auerbach signed the same as President of the boat company. Mr. Fleenor, of the 62nd Street Lumber Company, had not seen or heard of the financial statement of the boat company as given out by its President Auerbach, and was then considering closing the account at a time when the boat company owed the 62nd Street Lumber Company the amount of $5,000, but, after talking with President Auerbach over the telephone about the account and being by Auerbach referred to the financial statement as carried by Dun & Bradstreet about the boat company, Fleenor made inquiry and learned of this financial statement, supra, and was convinced that the boat company was solvent and financially able to pay its obligations as represented by Auerbach, President.
On page 157 of the record Auerbach testified that he signed "all of the checks of the corporation. He admitted that the financial report signed by him and given to Dun & Bradstreet had been released to the trading public. On page 158 he testified that the financial statement was given for the purpose of establishing a "credit rating". He further testified viz.:
"(By Mr. Franks): Q. Did you refer any of your creditors or prospective creditors to this report of Dunn & Bradstreet that you sent out on July 7, 1947? A. No, sir.
"Q. Did you know at the time that you signed this report that it would be used for credit purposes or credit ratings? A. No, sir. This report is the first report that was ever handed me in my life from Dun & Bradstreet or anyone else on a credit rating. This is something that is just as strange to me as if the Judge gave me a document to sign that I had never seen.
"Q. Now, were you apprised of all of these figures in this report when you signed it? A. All the figures except the $79,900. I do not know where that comes from. I do not know how it was arrived at. The $200,000 I can explain and all the other figures, but I do not know where the $79,900 comes from, sir.
"Q. You deny that you ever talked to Mr. Fleenor on the telephone? A. I do, sir.
"Q. Do you deny that you ever discussed any business transactions with him? A. Yes, sir.
"Q. You knew that Mr. Fleenor and Mr. Forbes had this particular lumber on hand, did you not? A. I never heard of Mr. Fleenor until this suit was brought.
"Q. And you never heard of the 62nd Street Lumber Company until this suit was brought? A. Yes, sir.
"Q. You knew that the corporation was advancing credit to the Emancipator Boat Company, didn't you? A. All I know is that Jimmy Forbes was selling lumber to the Emancipator Boat Company, and whether it was the 62nd Street Lumber Company or any other name 
"Q. You say you never did refer to this report for the purpose of a credit rating to any of your customers? A. To the best of my knowledge, that is correct, sir.
"Q. Did you testify in the Federal Court that you sent a copy of this report to the Gray Marine Motor Company? A. If I testified, that is the truth.
"Q. Is it the truth or isn't it the truth? A. I don't know. You will have to ask me a question exactly as it is there, sir.
"Q. You answered the question in the Federal Court 
"The Court: Give him the full question.
"(By Mr. Franks): `Q. Did you give out at any time Mr. Auerbach, any financial or credit statements? A. No, sir.
"Q. Who gave those on behalf of your company? A. If any were given, it would have been given by our accountant.
*899 "Q. Who is that? A. Sidney Wasserman, a certified accountant.
"Q. I show you a Dun & Bradstreet report of 1947 and ask you whether or not that report was issued by you? A. It is my signature to it, so that report was given by me.
"Q. Did you testify to that in the Federal Court? A. Yes, sir.
"Q. I will help you refresh your mind. I show you what purports to be a copy of a letter of February 5, 1948, from S. Mortimer Auerbach, President of the Emancipator Boat Company, addressed to John W. Mulford, Grey Marine Motor Company. Please examine that and state whether or not you wrote the original of which this purports to be a copy? A. Yes, sir.
"Q. In your letter of February 5, 1948, you referred Mr. Mulford to your last report to Dun & Bradstreet, didn't you? A. Yes, sir; that is what the letter states.
"Q. Did you testify to that? A. Yes; that's correct.
"Q. Then your testimony that you never referred anybody to this report of Dun & Bradstreet is not correct, is it? A. It is correct with an explanation. May I give the explanation?
"The Court: Certainly. Go ahead.
"A. (continuing): Mr. Mulford had known me for many, many years through boat racing. Mr. Mulford contacted me and in my letter I did write and mention that particular time for the credit rating. However, Mr. Mulford knew that we were buying small amounts and at no time were we buying large amounts, because that also was when we were in the storage and repair business, and prior to that we had bought many, many racing engines from Mr. Mulford.
"Q. Now, that did not detract from your actually sending the report to Mr. Mulford of Grey Marine Motors in undertaking to get credit for the corporation? A. I didn't send it to him, sir. I referred him to that credit rating; that's correct.
"Q. At the time you wrote that letter and sent that report to him, you were buying marine motors from his corporation? A. Yes, sir.
"Q. And you were given retained titles on those motors until they were sold? A. Yes, sir."
It further appears (Tr. 162) that Mr. Auerbach filed in the Bankruptcy Court against Emancipator Boat Company, Inc., a claim in the sum of $200,000. He could not give testimony as to the legal basis of his $200,000 claim so filed against the boat company, but at page 164, in reply to his counsel, he stated: "The one reason I claim it, and I guess the main and only reason I claim it, is upon advice from my attorneys."
Auditor Hall, after an examination of the books, testified (Tr. 84 to 90) that the books of the Emancipator Boat Company "never showed an excess of assets over liabilities except the first day of organization when the assets equalled the liabilities." It further appears by the books that the boat company operated at a loss.
Plaintiffs-appellants sued S. Mortimer Auerbach in an action of fraud and deceit, in the Circuit Court of Dade County, and in their complaint alleged that Auerbach, as President of the Emancipator Boat Company, Inc., signed a false and fictitious financial statement to Dun & Bradstreet for the sole purpose of obtaining credit, in which the assets of Emancipator Boat Company, Inc., were valued at the sum of $279,000; the outstanding indebtedness was fixed at the sum of $2,500; the net sales of the corporation from January 1, 1947, to June 1, 1947, amounted to the sum of $50,000, and that the business in all respects was in first class condition. The foregoing representations were made in writing by the defendant for the purpose of obtaining credit for the Emancipator Boat Company, Inc. The plaintiffs-appellants, following the usual course of trade, examined the above financial report and relied upon the statements therein made as to the financial ability of the boat company and extended it credit in the sum of $9,569.06.
Plaintiffs further alleged that the statements and representations made by Auerbach to Dun & Bradstreet were false, and known to be false when made, and were made by defendant to obtain credit for *900 the corporation, 98% of the stock of which was owned by him. That the truth of the whole matter was the corporation, at the time the false statements were made was insolvent and known by the President to be insolvent when his corporation obtained from the plaintiffs credit in the sum of $9,569.06.
The defendant-appellee, by appropriate pleadings, denied described portions of the complaint and the cause was heard by the trial court, a jury having been waived by the parties. After hearing all the evidence, the trial court entered a verdict and judgment for the defendant and plaintiffs appealed. It is here contended that the trial court applied to the controversy the improper rule of law, and additional thereto misinterpreted the legal effect of the testimony, when considered in its entirety.
The authorities hold that recovery may be had for misrepresentation as to a third party's financial condition where a person, for the purpose of inducing another to lend money or sell goods or other chattels on credit to said third person by misrepresenting the financial responsibilities of such third person or by misrepresenting the solvency or financial responsibility of such third person. 37 C.J.S., Fraud, § 48, P. 304; 26 C.J. 1192; Williams v. Bedenbaugh, 215 Ala. 200, 110 So. 286. In the case of Beeman v. Richardson, 185 Cal. 280, 196 P. 774, a representation was made that a certain corporation was prosperous, with a surplus of $40,000, when it was hard pushed for money and had a book surplus of but $6,000 on which a buyer of stock had no right to rely, was a false representation of fact and therefore actionable.
In the case of Dalen v. Hansen, 166 Wash. 597, 8 P.2d 416, a representation was made that a certain corporation owned the main or central store on Aloha Street; that the company was solvent and practically free from debt and that the stock was worth $100 per share. The purchaser relied upon the representations and later learned they were false and was injured. The court upheld a judgment for the plaintiff. In line with the above holding is the case of Jamestown Iron & Metal Co. v. Knofsky, 291 Pa. 60, 139 A. 611.
23 Am.Jur. 956-7, par. 131, states the rule viz.: "Information Furnished to Commercial Credit Agency.  It is generally held that any person who extends credit to one on the basis of information furnished to a commercial agency by the seeker of credit has the right to rely on the information so furnished, just as if the representations were made directly to the person dealing with the representor on the basis of such information. One who furnishes information to a commercial agency as to his financial condition is held to know that it is for publication to the business world, and that such publication will probably be consulted when he applies to any business institution for credit. It is considered that he can have no motive other than to enable the agency to communicate such information to persons who may be interested in obtaining it for their guidance. He is presumed to have made such statements for the purposes of obtaining credit and of enabling the agency to communicate the same to persons interested, for their guidance in giving credit to him. He makes his statement, therefore, knowing that it will probably be used as a basis of credit, and must be held to intend that whatever he so represents will be communicated by the agency to any patron who may have occasion to inquire. Hence, where it is shown that the representations have been falsely and fraudulently made, they are to be treated as having been made with that intent to each of the persons addressed, precisely the same as if each person had been singled out and sought to be so influenced. * * *"
In the case of Mizell v. Upchurch, 46 Fla. 443, 35 So. 9, the Court had before it the legal sufficiency of a common law declaration. It grew out of the following letter written by Dyal & Upchurch to J. Mizell & Bro., Kings, Fla. "Dear Sir: This will introduce to you B.H. Powell, who wants to buy some mules. Mr. Powell is alright and any favors you can show him will be appreciated by us" Signed: Dyal & Upchurch". Mizell, upon receipt of the letter, sold the mules to Powell on *901 credit and the sale proved a complete loss to Mizell. This Court sustained the declaration and enunciated the rule as to fraud and deceit substantially as set forth in the above cited authorities. The rule in the Mizell case has been reaffirmed by this Court. See: Houchins v. Case, 138 Fla. 368, 189 So. 402, and Morris v. Ingraffia, 154 Fla. 432, 18 So.2d 1.
It is admitted on the record that Auerbach was the President and Treasurer of the corporation; Chairman of the Board of Directors; handled all the funds of the corporation; he owned 98% of its stock; he was a creditor of the corporation; he signed the above commercial statement and delivered the same to Dun & Bradstreet; he was at the meeting when the resolution was adopted by the officers, directors and stockholders consenting to or approving the entry of an order adjudging it a bankrupt; and he filed or caused to be filed, a claim in the Bankruptcy Court, upon advice of counsel, against the Emancipator Boat Company, Inc., in the sum of $200,000 in which he seeks a recovery of the assets, if any, of the bankrupt corporation. It is not clear from the record whether the $200,000 claim by him asserted is as a common or preferred creditor of the corporation. It is true that Auerbach denied having a telephone conversation with Fleenor about the lumber account in which he referred the 62nd Street Lumber Company to his financial statement given to Dun & Bradstreet and likewise denied referring a Mr. Mulford, another creditor of the corporation, to his Dun & Bradstreet financial statement until confronted with testimony previously given by him in the bankruptcy court, when he admitted that his previous testimony on the point was correct, with a certain explanation by him given.
It is our conclusion that the trial court misinterpreted the legal effect, in light of the above cited authorities, of the commercial report by Auerbach signed under date of March 29, 1948, and delivered to a representative of Dun & Bradstreet, and by it thereafter published and upon which the 62nd Street Lumber Company relied in extending credit to the Emancipator Boat Company, Inc., and thereby injured. Accordingly, the judgment appealed from is reversed and a new trial awarded.
SEBRING, C.J., and ROBERTS and MATHEWS, JJ., concur.