The **COMMUNITY BANK, LAKE OSWEGO, OREGON, Plaintiff-Appellant,**

v.

**BANK OF HALLANDALE AND TRUST COMPANY, Defendant-Third Party Plaintiff-Appellee.**

**Craig G. KALLEN, Defendant-Appellee,**

v.

**Jerome LURIE, Third Party Defendant.**

No. 72–2845.

United States Court of Appeals, Fifth Circuit.

July 23, 1973.

Rehearing Denied Sept. 5, 1973.

Howard A. Setlin, Miami Beach, Fla., for plaintiff-appellant.

Charles F. Mills, South Miami, Fla., for Bank of Hallandale and Trust Co.

Craig G. Kallen, pro se.

Jerome Lurie, pro se.

Before THORNBERRY, AINSWORTH and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The critical question on this appeal is whether the plaintiff bank in Oregon, in making a personal loan, relied on misrepresentations of the trust officer of the defendant bank in Florida regarding the borrower's financial condition. Although the District Court found the representations to be false, it held that the plaintiff's tort claim for damages must fail for want of reliance. We think that the evidence compels a finding of justified reliance and reverse.

On May 31, 1971, Jerome A. Lurie executed a $50,000 promissory note payable to plaintiff, The Community Bank, Lake Oswego, Oregon. The loan had not yet been approved and was to be secured on a two-for-one basis by I.B.M. grade securities in Lurie's trust account with the Bank of Hallandale.

On June 2, 1971, Maldyn C. Evans, Community Bank's president, telephoned

Craig G. Kallen, the Bank of Hallandale's sole trust officer, introduced himself, and inquired about Lurie. Evans indicated that the Oregon bank was considering lending Lurie $50,000 and sought information concerning Lurie and his trust account with the Florida bank. Kallen replied that he had discussed this matter with Lurie, who was an extremely good customer of the bank, had a high seven figure trust with the bank, and had good balances on his accounts. Kallen offered, if Evans would send him a copy of the promissory note, to set aside securities held by Lurie at the defendant bank as collateral for the loan. All of this information was in the hands of the Florida bank, and Kallen neither qualified these statements nor raised any suspicion about his representations.

The facts reported by Kallen were false. As of June 2nd, Lurie had a zero balance at the Bank of Hallandale. At no time, either before or after that date, were the securities referred to by Kallen in the Florida bank's possession.

On June 3rd, during an audit, it was discovered that certain securities which the Florida bank held as collateral for its own loans to Lurie were in street name, had been stolen, and were subject to stop orders. Consequently, Kallen was relieved of his duties, but remained in his office and received telephone calls as a bank officer until his employment was terminated on June 11th. The Court found, despite denials by Kallen, that in a second telephone conversation with Kallen, on June 10, 1971, Evans asked if collateral had been set aside for the proposed loan and Kallen responded, "I told you already they had." When asked if he would forward a list of securities, Kallen replied, "I told you I would."

After the June 10th call, Evans approved the loan. On his instructions, the cashier and vice-president of Community Bank telephoned Lurie at Kallen's office in the Florida bank. Kallen answered the telephone, indicated that Lurie was in his office, and then turned the telephone over to Lurie, who authorized disbursement of the $50,000. The funds were then disbursed.

On June 16, 1971, Evans wrote Kallen a letter which the District Court held evidenced an intent to obtain future documentation before disbursement. Since the Court apparently relied exclusively on this documentary evidence to find no reliance, it is set out in full:

"Dear Mr. Kallen:

In connection with the loan transaction we have with your client, Dr. Jerome A. Lurie, we enclose herewith a certified photocopy of the note executed by Dr. Lurie and payable to us in accordance with the terms therein.

It is our understanding that this copy together with Dr. Lurie's instructions to you will permit you to collateralize his loan at this bank on a two-for-one value ratio. We enclose our form of collateral agreement which we presume will be executed by your Department for us, and that a collateral receipt describing the securities pledged (or the equivalent thereof) will be forthcoming for our files.

When replying, we would appreciate it if you would include either a photocopy of Dr. Lurie's financial statement or sufficient narrative information to indicate his general financial strength and reputation.

Thank you for your assistance.

Very truly yours,
/s/ M. C. Evans, President"

We think that this letter cannot serve the Bank of Hallandale as a defense. This action is based not on an agreement or an understanding between the parties, but on the tort claim of misrepresentation. Plaintiff predicated this action upon Kallen's fraudulent telephone misrepresentations and the doctrine of apparent authority in regard to the Bank of Hallandale. *See* Gleason v. Seaboard Airline R.R. Co., 278 U.S. 349, 49 S.Ct. 161, 73 L.Ed. 415 (1929).

◼ We conclude the evidence compels a finding that, in authorizing the

Lurie loan, Community Bank's president did rely on Kallen's factual misrepresentations that Lurie had securities in proper form in his trust account with the Bank of Hallandale and that these could be used as collateral for the loan and had been set aside for this purpose. The June 16th letter could not preclude recognition of Community Bank's reliance on earlier telephone conversations regarding Lurie's financial condition. Although paperwork needed to be completed to conclude the collateralization, it was not the Bank of Hallandale's failure to comply with the collateral agreement, but the fact that the Florida bank never possessed the securities in proper form that was fundamental to the damage to Community Bank.

It is the general law, as well as the controlling law in Florida, that recovery may be had for misrepresentation as to a third party's financial condition where a person, for the purpose of inducing another to lend money to said third person, misrepresents the financial responsibility or solvency of such third person. Nevada Bank of San Francisco v. Portland Nat'l Bank, 59 F. 338 (9th Cir. 1893); Forbes v. Auerbach, 56 So.2d 895 (Fla.1952).

The District Court, in its final judgment, listed elements essential to proving misrepresentation: (1) a false statement of fact, (2) known by the defendant to be false at the time it was made, and (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) action by the plaintiff in reliance on the correctness of the representations; and (5) resulting damage to the plaintiff. Tonkovich v. South Florida Citrus Industries, Inc., 185 So.2d 710 (Fla.App.1966), remanded on other grounds. The Court recognized in this fact situation each of these elements except reliance.

For reliance to be proved,

[i]t is enough that the representation has had a material influence upon the plaintiff's conduct, and been a substantial factor in bringing about his action. It is not necessary that the representation be the paramount, or the decisive, inducement which tipped the scales, so long as it plays a substantial part in affecting the plaintiff's decision.

Prosser, Torts § 103 at 730 (3rd ed. 1964). It is clear from the record that Evans sought information from Kallen, as the Bank of Hallandale's trust officer, as to facts concerning Lurie's financial position, the existence of the subject securities, and their segregation in his trust account. Thus, Kallen's misrepresentations had a "material influence" on and were a "substantial factor" in Community Bank's loan decision. No stricter standard of reliance is required. A false representation is actionable if it substantially contributed to the formation of plaintiff's determination to act. See Woods-Faulkner & Co. v. Michelson, 63 F.2d 569 (8th Cir. 1933); H. D. Sojourner & Co. v. Joseph, 186 Miss. 755, 191 So. 418 (Miss.1939); Stackpole v. Hancock, 40 Fla. 362, 24 So. 914 (Fla. 1898).

To constitute remediable fraud, however, it must appear not only that there was reliance on the misrepresentations, but that the reliance was justified under the circumstances. Fote v. Reitano, 46 So.2d 891 (Fla.1950); Ramel v. Chasebrook Construction Co., 135 So.2d 876 (Fla.App.1961). For the reliance to be justified, the misrepresentation must concern some material thing unknown to the plaintiff either because he did not examine it, because he had no opportunity to become informed, or because his entire confidence was reposed in the defendant. Robson Link & Co. v. Leedy Wheeler & Co., 154 Fla. 596, 18 So.2d 523 (1944). See Prosser, Torts § 108 at 716 (4th ed. 1971).

In light of Kallen's position as trust officer of the Florida bank, the fact that essential information regarding Lurie's financial condition was in the hands of the Bank of Hallandale and the fact that Kallen obviously intended for Evans to believe the information given, Evans

**1128**

was justified in relying on Kallen's telephone communications.

On remand, the District Court need consider only the question of damages.

Reversed and remanded.

### ON PETITION FOR REHEARING

PER CURIAM:

It is ordered that the petition for rehearing filed on behalf of Bank of Hallandale and Trust Company, Appellee in the above entitled and numbered cause be and the same is hereby denied.

Although the Court's opinion indicated that the District Court need consider on remand only the question of damages, that reference applied only to Community Bank's action against Bank of Hallandale and would not preclude consideration of Bank of Hallandale's third party action against its former trust officer, Craig Kallen, or any other related actions.