438 So.2d 426 (1983)
SOUTHERN CALIFORNIA FUNDING, INC., as general partner of and d/b/a American Funding Limited, a New Jersey Limited Partnership; and American Funding Corporation, a New Jersey Corporation, D/B/a the Money Savers, Appellants,
v.
Bill R. HUTTO and the Wewahitchka State Bank, Appellees.
No. AM-394.
District Court of Appeal of Florida, First District.
September 13, 1983.
Rehearing Denied October 17, 1983.
*428 George L. Hudspeth and Michael G. Tanner, Mahoney, Hadlow & Adams, P.A., Jacksonville, for appellants.
Wilfred C. Varn, Thomas M. Ervin, Jr., and Lewis M. Killian, Jr., Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, for appellee Bill R. Hutto.
David C. Gaskin, Wewahitchka, for appellee Wewahitchka State Bank.
LARRY G. SMITH, Judge.
We affirm the trial court's entry of a summary final judgment finding no liability against appellees. Appellants[1] instituted this action after a loan transaction made by appellants to third parties went bad, resulting in a foreclosure and judgment against the borrowers. Appellants sued for fraud, negligence and conspiracy against Hutto, an attorney who closed the loan for appellants, and for fraud and conspiracy against the Wewahitchka State Bank, which had furnished credit information concerning the borrowers. The complaint also included claims for fraud, negligence and conspiracy against various other defendants (not involved in this appeal), including Rayner and Associates, Inc., the mortgage brokerage firm which negotiated the loan, an individual employed by that firm, the borrower's accountant, and a real estate appraiser employed by appellants.
At the outset it should be noted that although appellants' initial brief advises this court that the judgment obtained in the foreclosure suit against the borrowers  I & E Properties of Florida, Inc., and Ira Hill, Jr. and his wife Lynn Hill  remains unsatisfied, the record has been supplemented by a certified copy of a satisfaction of judgment reflecting full payment and satisfaction of that judgment. The satisfaction and judgment was executed and recorded prior to the entry of the summary judgment involved in this appeal. Appellants' reply brief acknowledges the error, and explains that the satisfaction of judgment was handled by out-of-state counsel for appellants, without the knowledge of appellants' counsel of record in this litigation. Despite this satisfaction of judgment, appellants claim recovery of other damages which they assert were not included in that judgment.
Turning to the merits, in our view the trial judge correctly entered summary judgment for Hutto, in that there is an entire absence of any factual issue regarding the claim of fraud, negligence, or conspiracy on the part of Hutto. The most damaging allegation made against Hutto is that he failed to inform appellants of his prior representation of the borrowers in connection with other transactions. On this issue, Hutto stated in his affidavit filed in *429 support of summary judgment that he did disclose that prior representation by informing appellants' representative, Riordan (vice president of AFC), at the closing. In Riordan's deposition he conceded that he could not remember whether or not Hutto told him about his prior representation of the borrowers. However, in an affidavit filed in opposition to Hutto's motion for summary judgment, Riordan attempted to create an issue by denying that Hutto told him of the prior representation. This is clearly impermissible, and the trial judge was eminently correct in refusing to regard this affidavit as creating a genuine issue of fact. See, McKean v. Kloeppel Hotels, Inc., 171 So.2d 552 (Fla. 1st DCA 1965).
Hutto also maintained in his affidavit that he was initially contacted by appellants on June 19, 1979, at which time he was informed that he would be the attorney closing the loan for appellants on June 21, 1979, a mere two days later. Hutto further stated that he had no function in the closing except with respect to disbursement of funds after receiving authority to do so from Riordan. Here again, although Hutto's role as closing attorney is substantiated by the depositions of both Riordan and Dacey (president of AFC), Riordan and Dacey attempted  by affidavit in opposition to Hutto's motion for summary judgment  to expand Hutto's role in the transaction. Again, the trial court properly disregarded this change in position. McKean v. Kloeppel Hotels, Inc., supra.
Hutto's limited role as closing or disbursing attorney in this transaction was clearly established, as was the fact that appellants did not rely upon Hutto for the furnishing of credit information regarding the borrowers, the credit check and loan approval having taken place prior to Hutto being contacted on June 19. Under the circumstances, we can find no breach of duty on Hutto's part in failing to disclose a pending mortgage foreclosure action against the borrowers (which was later dismissed), nor the fact of Hill's prior income tax evasion conviction. These were matters of record, within the knowledge of Rayner as well as of common knowledge in the community, and were matters such as would routinely be discovered in a reasonably thorough credit investigation. We also reject appellants' contention that it was entitled to rely upon credit references supplied by Hutto earlier in the year to Rayner and Associates, Inc., concerning the credit standing of I & E Properties of Florida, Inc. in connection with its payment of existing financing on a mobile home park entirely unrelated to this transaction. Hutto's letters were not misleading, as appellants urge. Further, they were not directed to appellants, and there is an uncontroverted assertion by Hutto that he had no knowledge that appellants would see or rely upon either or both of these letters. Both the April 3 letter and the February 26 letter went to employees of Rayner, the mortgage broker. Assuming that appellants were advised or had knowledge of the April 3 letter, but not of the February 26 letter (which disclosed Hutto's representation of I & E Properties as well as the pending foreclosure against it), there is no way in which the lack of communication of the February letter to appellants can be attributed to Hutto. We find no basis upon which appellants may subject Hutto to liability by claiming to have relied upon these letters to their detriment.
Appellants' contention that Hutto was negligent in failing to obtain a survey of the property used as security for the loan has no merit. Even assuming a disputed issue of fact as to whether Hutto ever advised Riordan that a survey should be obtained, the uncontroverted facts are that AFC's standard practice was to furnish a street address, which the closing attorney would then submit to a local abstract and title company for preparation of a legal description and title binder. The same practice was followed in this instance. Furthermore, in over one hundred closings within six months prior to this one, regardless of the closing attorney used, in not one instance did appellants secure a survey.
As for appellants' case against the bank, they rely heavily upon a letter dated *430 April 2, 1979 from the bank to Rayner concerning the status of Hill's loan with the bank and Hill's creditworthiness in general. The letter recites that Hill had had numerous loans, all of which had been paid as agreed. The letter further stated: "At the present time he has a floor plan with a low six figure balance." The bank's answers to interrogatories and other affidavits and documentary material examined by the trial court substantiated the bank's contention that there was no falsity or misrepresentation of material facts in this letter. We agree. Appellants urge otherwise, however, and assert that the trial court prevented them from showing a genuine issue of fact by refusing to consider portions of a deposition given by Hill in another case. The trial judge rejected the proffered deposition, apparently relying on this court's decision in Burlingham v. Allen, 317 So.2d 780 (Fla. 1st DCA 1975). We agree that the trial judge was probably in error in rejecting the deposition. It would seem that the trial judge could properly take notice, under Section 90.202(6), Florida Statutes (1981) of a deposition taken and actually filed in another court proceeding, when a certified copy of the deposition or pertinent portions are filed in the case under consideration in support of or in opposition to a motion for summary judgment. See, First National Bank of Clearwater v. Morse, 248 So.2d 658 (Fla. 2nd DCA 1971) (although not an issue on appeal, the opinion discloses use of a deposition taken in an earlier probate case on summary judgment).
However, we are not compelled to reconcile any possible conflict with the language of Burlingham. The law applicable to the claim of misrepresentation has been stated as follows:
It is the general law, as well as the controlling law in Florida, that recovery may be had for misrepresentation as to a third party's financial condition where a person, for the purpose of inducing another to lend money to said third person, misrepresents the financial responsibility or solvency of such third person. [citations omitted]
Community Bank, Lake Oswego, Oregon v. Bank of Hallandale And Trust Company, 482 F.2d 1124 (1973), at 1127.
Upon examination of the proffered deposition testimony, in relation to the contents of the letter, we are of the opinion that Hill's bare reference in the deposition to payment (to Wewahitchka State Bank, and others) of some delinquent floor plan interest from a portion of the proceeds of the subject loan at an undisclosed time fails to create a genuine issue as to any alleged pre-loan misrepresentation by the bank. Furthermore, assuming the statement by Hill referred to an indebtedness existing on the date of the letter, it must be noted that the bank's letter actually disclosed the floor plan indebtedness, including the existence of "a low six figure balance." Appellants fail to show how they were misled by this letter. The bank's answer to interrogatories and an accompanying loan schedule show that there was no indebtedness whatever due at the time the subject loan was closed. When considered in the light of the bank's sworn statements that all loans had been paid, and its disclosure of the outstanding loan, the evidence, including Hill's vague reference to payment of delinquent interest, is not susceptible to a reasonable inference that the bank was guilty of fraudulent misrepresentation in writing the letter. A charge of fraud or conspiracy resting upon so slender a reed as this appears to us to be appropriate for disposition by summary judgment. We have not overlooked the deposition reference by Hill, also emphasized by appellants, concerning another unpaid loan. Our reading of the entire deposition excerpt concerning this alleged loan (also not identified as to time) indicates that it was a loan owed to a Mr. Kilbern [sic] for some Wewahitchka bank stock purchased from him, as to which he held a lien, and held the stock for security. This does not indicate an indebtedness to Wewahitchka State Bank.
Finally, appellants contend that summary judgment was prematurely granted because discovery was incomplete. Appellant relies on Salzberg v. Eisenberg, 368 So.2d 442 (Fla. 3rd DCA 1979), in which a final summary *431 judgment was reversed where objections to interrogatories and a motion to produce were pending. "Prior to a determination by the trial court of these objections, it was not possible to ascertain whether any genuine issues of any material facts remained in the cause. Absent such a determination, it was untimely for the trial court to render a final summary judgment in favor of appellees." Id. at 442. In a later decision, Societe Euro-Suisse, S.A. v. Citizens and Southern International Bank, 394 So.2d 533 (Fla. 3rd DCA 1981), the Third District reversed a summary judgment as prematurely entered because the plaintiff, "through no fault of its own" had not completed its discovery in the case (and because the record did not conclusively foreclose recovery). Id. at 533, 534. The Third District also reversed in Moore v. Freeman, 396 So.2d 276 (Fla. 3rd DCA 1981), where summary judgment was entered before the plaintiff "through no fault of his own" had completed his discovery. Id. at 276.
We do not take issue with the rulings in the cases above cited. However, upon review of the record before us it appears that the question is not simply whether appellants had completed their discovery, but whether the trial court abused its discretion in granting summary judgment when appellants waited until the hearing on appellees' motion for summary judgment to seek a ruling on their motion to compel discovery, and motion for continuance so as to allow additional time for completion of discovery. We think there was no abuse of discretion. This suit was filed on May 4, 1981. Appellees engaged in vigorous discovery, while appellants directed no discovery demands upon Hutto or the bank until October 30, 1981, at which time they requested production of certain documents and propounded certain interrogatories. After intervening dismissal of the original complaint, Hutto on December 7, 1981 timely objected to eight of the proposed interrogatories, but answered the remainder, and on December 23, 1981, timely objected to certain of the demands for production. The bank answered the interrogatories on December 23, 1981, after receiving a short extension by court order. There the matter rested without further efforts on appellants' part, despite the fact that Hutto's initial motion for summary judgment had been served on December 7, 1981. On February 24, 1982, Hutto served his amended motion for summary judgment. The bank served its motion for summary judgment on March 1, 1981. Appellants still made no effort to go forward to enforce discovery. On March 4, 1982, Hutto served notice of a hearing on his amended motion for summary judgment to be held on April 5, 1982. Appellants still made no effort to obtain a ruling on Hutto's objections, or to compel discovery. Finally, on March 23, 1982 appellants served a motion to compel discovery, and accompanying motion for continuance, asserting the pendency of the motion to compel. On March 24, appellants served notice that their motion for continuance and to compel discovery would be called on for hearing on April 5, 1982, at the time set for hearing on the bank's and Hutto's motions for summary judgment.
At the hearing, after being advised of the foregoing facts with respect to appellants' discovery efforts, the court inquired of appellants' counsel concerning what efforts had been made to complete discovery. Counsel informed the court that the motion to compel was set for hearing that day. The court then asked: "You didn't set it before today?" Upon receiving a negative answer, the court heard from other counsel, and then announced: "The motion to continue is denied. We will go forward with it." Implicit in this ruling was also a denial of the motion to compel, for in the discussion that preceded the ruling denying motion for continuance counsel for the bank informed the court that full details of the bank's loans to Hill and I & E had been covered in its answers to interrogatories, and counsel for Hutto complained of appellants' tactic of "sitting in a pattern of holding, stalling and seeing what develops." Before ruling, the court invited additional comments from appellants' counsel, but none were forthcoming. We think the trial judge was acting within his discretion in *432 denying a continuance and instead going ahead with the hearing on appellees' motion for summary judgment, on the ground that appellants had not been diligent in seeking discovery. See, CIA. Ecuatorian D. Aviacion v. U.S. & Overseas Corp., 144 So.2d 338 (Fla. 3rd DCA 1962).
AFFIRMED.
JOANOS and NIMMONS, JJ., concur.
NOTES
[1] For convenience we use the term "appellants" in reference to the lending entity. Actually, American Funding Corporation (AFC) was the entity which issued the loan to I & E on June 21st, 1979. Subsequently, AFL was formed pursuant to a certification of limited partnership signed on November 15, 1979, with AFC as the general partner and SCI and Genstar Pacific Financial Corporation as limited partners. In the certificate of limited partnership, AFC assigned its rights with respect to this cause of action to AFL. AFC then merged into SCI on March 4, 1980, and SCI became the sole general partner of AFL.