58 So.2d 539 (1952)
DAVIS et ux.
v.
DUNN et al.
Supreme Court of Florida, Special Division A.
April 25, 1952.
Rehearing Denied May 20, 1952.
J.B. Patterson, Fort Lauderdale, for appellants.
Morehead, Forrest, Brown & Gotthardt and David D. Phillips, all of Miami, for appellees.
CHAPMAN, Justice.
On October 17, 1947, Virginia M. Dunn and husband Paul V. Dunn, for and in consideration of the sum of $14,000, conveyed by warranty deed described property situated in Dade County, Florida, consisting of a home and furnishings, to Pete J. Davis and wife, Cosette Davis. The Davises paid to the Dunns at the time of the execution and delivery of the deed the sum of $7,000 in cash and simultaneously executed a purchase price mortgage on the property conveyed for the sum of $7,000, which was to be paid at the rate of $75 per month. The deed and mortgage were duly recorded among the public records of Dade County, Florida. The Davises went into possession of the property, and on February 29, 1948, found that the property was heavily infested with termites, which had caused considerable damage to the property.
M.A. Todd, as real estate broker for the Dunns, negotiated the sale of the property to the Davises and represented and assured the Davises that the dwelling situated on the property was free from termites as Paul V. Dunn had examined the dwelling or caused the same to be examined on two separate occasions for termites shortly prior to the conveyance of the property and found none. The Davises accepted as true and acted upon the statement and representation as made to them by the sellers' broker and accepted a deed, paid $7,000 in cash and executed the purchase price mortgage in question, and on February 29, 1948, some four or five months thereafter, discovered that the dwelling and furnishings were heavily infested with termites. The Davises were induced by fraudulent misrepresentation on the part of the broker of the sellers to purchase the property, pay $7,000 and execute a purchase price mortgage, which they would not have done had they known the true facts about the termite infestation of the dwelling.
The Davises, prior to the purchase, made inquiry of the owners' broker as to whether or not the premises were infested with termites, when Mr. Todd, the broker, replied by striking the exterior of the building with his hand and stating to the prospective purchasers that the house was "solid" or "sound" and that the premises had been recently inspected for termites and none were found. It developed some four or five months after the purchase that the premises were heavily infested with termites and had been for several years *540 prior to the purchase by the Davises. The Davises contend that they relied upon the representations of the owners' broker as to the nonexistence of termites about the premises and were deceived. The representations so made were false and made with a full knowledge of their falsity for the sole purpose of inducing the Davises to purchase the property and they relied upon the truthfulness of the statements as made by the owners' broker and acted to their injury.
The Davises filed suit against the Dunns and prayed for a rescission of the sale of the property; that the purchase price mortgage be cancelled; that a lien be decreed against the property for the $7,000 paid on the purchase price and for the costs of improvements made about the property after the purchase and prior to the discovery of the termites. The Dunns, by an appropriate pleading, denied each and every the allegations as to misrepresentation of material facts prior to the sale. In a counterclaim they sought a foreclosure of the purchase price mortgage. The cause was referred to a Special Master and some three or four hundred pages of testimony taken on the issues made by the pleadings. The Special Master recommended that the sale be rescinded because of false representations of material facts made by the owners and their broker and that the equities be decreed to be with the Davises. The Chancellor denied the recommendations of the Master and found the equities of the cause with the Dunns. A decree of foreclosure was entered as sought in the counterclaim. The plaintiffs appealed.
On the question of appellant Davis' opportunity to inspect the premises for termites the record shows: Davis testified that it was an ordinary arms-length transaction and that he was not high-pressured; that he knew it was an old house and that he had been told to be on the "look-out" for termites; that he visited the house three or four times between the time he signed the contract of purchase and the time the deal was closed and that Mrs. Dunn had given him the key and that he had complete freedom to inspect as much as he wanted and that he "could have gone in and torn it up" and that he could have had a termite expert make an inspection for termites. From Davis' testimony it can be seen that no restrictions or limitations were placed upon him as to how far he might go in making a termite inspection or in having a termite expert make the inspection for him. There was nothing said or done by the defendants or the broker which would lead the plaintiffs to believe that they were not allowed to knock some plaster off if that was necessary in order to make a thorough inspection. Davis testified that the reason he didn't knock some plaster off was because it was not his house until the deal was closed. It appears that he did not ask for permission to knock some plaster off and there is nothing in the record which would lead anyone to think that permission would not have been given had it been requested. Davis was asked this question: "When you were told that it had been inspected within the past year, did the thought occur to you that you didn't see where it could have been inspected?" He answered: "No, sir, I didn't look." The Master asked Davis if anything was said or done which would have led him to believe that he would have been denied the right to inspect for termites if he had requested it. He replied: "I don't personally believe they would have refused it, but I wouldn't have asked him in the face of them telling me it wasn't there."
The findings of fact by the Special Master are substantially viz.:
"Mr. Todd showed plaintiffs the premises and upon being asked the condition of the house, he struck the side of the building and said that the house was solid and sound. He also informed plaintiffs as prospective purchasers that the defendant had had the house inspected for termites, either once or twice, and that none had been found. He represented the house as being in good condition. Prior to the sale the defendant Mr. Dunn told Todd that he had had the premises inspected for termites and the report was that there were no termites in the house; Mr. Todd relied on that statement *541 of the defendant and his own visual inspection of the premises, and when he sold the house for the defendants as their agent he conveyed that information to the purchasers and expected them to rely thereon. Mr. Todd did not tell the plaintiffs positively that there were no termites in the house, but he did tell them that the house was in sound condition, that it had been inspected for termites and none were found to be present, and that the defendants had told him of the inspection, representing the house to be in sound condition, that he believed from such a representation that the house was in sound condition and free from termites, and passed that information on to the plaintiffs and expected them to believe it.
"The defendant Virginia M. Dunn testified that shortly prior to the sale the house had been examined for termites by one James McFarlane and that he had reported there were no termites present. She also testified that one other termite inspection was made prior to the sale, the result of which also was negative. The Master finds as a fact the termite inspections were made, such as they were, and each inspector reported to Mrs. Dunn that there were no termites present. However, the inspections were voluntary solicitations made by incapable personnel, cursory in nature, and the defendants should not have relied on them as proof that there were no termites present, nor should this information have been passed on to the prospective purchasers as being reliable and on which they were intended to rely. For example, the inspection made by the witness McFarlane was made after he had been in the State of Florida for a period of less than a month and he had had no previous experience in the work, and in fact had done little or no termite work at the time he made the inspection. His inspection was only visual, and to the exterior of the walls only.
"At the time of the representation made by defendants' Agent Todd to the plaintiffs that the house was in good condition and free from termites, on which plaintiffs were expected to rely and on which they did rely, the house was heavily infested with termites and had been so infested for a number of years. Because of the nature of the construction of the house, this fact could not be ascertained by a cursory examination but required the breaking of the stucco outside wall or the breaking of a plaster wall on the inside. This had not been done by any so-called examiner prior to the time it was done by the plaintiff some time after the purchase was consummated. Therefore, at the time of the purchase the house was not in good sound condition and was not free from termites as represented.
"The Master finds that there was no fraudulent intent on the part of the defendants or their agents in making the misrepresentation, but that the misrepresentation was made innocently as a result of misapprehension of mistake. Patently it was based on the cursory examinations made by unqualified persons and their report to the defendants that there were no termites present. However, this fact was not made clear to the plaintiffs, but the information was passed on to them in such a way as to lead them to believe that there had been a qualified and thorough inspection of the premises which resulted in the finding that there were no termites present. Only the defendants could have known of the nature of the inspection and it was their duty, if they expected the plaintiffs to rely on the information so passed on to them, to advise of the nature of the inspections and not to unqualifiedly represent that the house was in a sound condition and free from termites because of previous recent inspections. The Master finds that the misrepresentation was and is false and actually did mislead the persons to whom it was made."
Counsel for appellants in their reply brief point out "that an inspection of the property *542 (by the purchasers) was not feasible under these conditions; that said plaintiffs would not be expected to smash into the stucco outside walls or break into the plaster inside walls all about the dwelling house in order to ascertain whether or not there was a serious termite condition which rendered the building undesirable and unsafe. * * * In view of this extreme latent defect they (plaintiffs-appellants) were perfectly free to rely on representations made to them that the house was free from termites." It is further contended that the misrepresentations of the owners' agent Todd as to the premises being free of termites, when as a matter of fact the premises were heavily infested, as a matter of law, entitled the plaintiffs-appellants to a rescission and cancellation of the contract of sale.
The case of Greenberg v. Berger, Fla., 46 So.2d 609, 610, involved a bill of complaint praying for a rescission of a contract of sale. The gravamen of the amended bill of complaint was to the effect that appellee, in the course of negotiations leading up to the execution and delivery of the written agreement, misrepresented a material fact for the purpose of inducing the appellant to act and to his injury. The alleged misrepresentation consisted of false and untrue statements as to the amount of monthly rentals of the several apartments which were at the time under OPA control. The appellant purchaser could have obtained information by inquiry at the OPA rental offices as to the exact monthly rentals of the apartments. This was not done by the appellant, but he accepted as true the statement made by the owner as to the monthly rental. In holding against the claim for rescission and cancellation we, in part, said: "* * * It is true that the law recognizes the right of a trader or dealer `to cry his own wares', but these statements are but mere expressions of opinion and the purchaser is not relieved of the duty and responsibility of an honest and thorough investigation as to the truth of the statements of the trader or dealer. See Hancoy Holding Co. v. Lambright, 101 Fla. 128, 133 So. 631; Glass v. Craig, 83 Fla. 408, 91 So. 332; Hart v. Marbury, 82 Fla. 317, 90 So. 173, and similar cases. * * *"
It is the writer's view, after a careful study of the record, that plaintiffs-appellants had a full and ample opportunity to inspect the premises for termites or to have obtained the inspection services of an expert in this field prior to accepting the deed, paying $7,000 in cash, and giving back a purchase money mortgage on the property for $7,000. We find nothing in the evidence to the effect that the plaintiffs-appellants were denied the right and privilege by the defendants-appellees to make an inspection of the property for termites in any manner desirable, but they elected not so to do and accepted as true the statements of the broker of the owner that the property was not infested with termites.
Affirmed.
SEBRING, C.J., and THOMAS and MATHEWS, JJ., concur.