### SCHULZ v. LINKOUS.
### No. 27756.
Circuit Court, Volusia County.

June 5, 1958.

Norton Josephson, Daytona Beach, for plaintiff.

Thomas A. Koehler, Daytona Beach, for defendant.

HORACE D. RIEGLE, Circuit Judge.

This day this cause came on for final hearing on the complaint filed by the plaintiff, the answer and counterclaim filed by the defendant, and the testimony taken before the court. Learned counsel for the plaintiff, Norton Josephson, and learned counsel for the defendant, Thomas A. Koehler, each filed excellent briefs with the court, and the court is indebted to them for this service.

The complaint alleges that the defendant owns an 11-unit motel in Volusia County, and that on October 25, 1957 he leased it to the plaintiff at a rental of $700 per month under a written lease, a copy of which is attached to the complaint. The complaint further alleges that at the time the lease was entered into defendant represented to plaintiff that the prior tenants of the defendant, who had operated the property, known as the "Cottage Colony Motel and Apartments," had grossed over $18,000 for the year immediately preceding October, 1957, that plaintiff requested defendant to produce the books showing such gross revenue for the motel and defendant represented that the prior tenants had left taking all the books and records with them, and that he did not know their whereabouts.

The complaint further alleges that the representations above described were false and fraudulent and were known to be so by the defendant at the time of making the same and were made for the purpose of inducing the plaintiff to enter into the lease. Plaintiff further alleges that defendant knew that the representations were false, and that the prior tenants had grossed less than $12,000 during the year immediately prior to October, 1957.

It is further alleged that plaintiff did not know the truth as regards such representations but believed them to be true and relied on them and, after making every reasonable effort to ascertain the truth by requesting the books and records, was deceived by the defendant and was induced to enter into the lease and to pay defendant $3,300 as advance rent for the last six months thereof.

It is further alleged that plaintiff operated the motel until March 15, 1958 and grossed less than an average of $500 per month, that plaintiff did not learn the truth with regard to defendant's representations until March 19, 1958, and, upon learning that the representations were false and fraudulent he demanded a rescission of the lease and a return of the advance rent, which was refused.

Thereupon, on March 20, 1958 plaintiff brought this action to rescind the lease and to recover the advance rent paid.

Defendant in his answer admits that plaintiff paid $3,300 as advance rent for the last six months of the lease, but denies that he made the alleged false representations.

The record shows that plaintiff surrendered possession of the property to defendant at the time he demanded rescission of the lease and the return of his $3,300 advance rent payment.

After hearing the testimony of the parties and the witnesses produced before the court, and after taking into account the consistencies and inconsistencies of the testimony, the probability or improbability of the testimony, the prior statements including depositions taken, some of which were grossly at variance with the testimony before the court, to which the court will hereafter refer, the court is convinced the defendant made the false statements.

The defendant admitted that in his deposition taken prior to trial he testified that in January of 1952 the income from the property was $1,500, whereas the actual income was only $598. He further admitted that he testified in his prior deposition that the income for the month of February 1952 was $2,400, whereas the actual income was $1,783.50. He admitted that in his prior deposition he stated under oath that the income for March of 1952 was $2,400, whereas the actual income was $1,872.50. He admitted that in his prior deposition he stated that the income for April of 1952 was $2,000, whereas the actual income was $1,690.50.

Defendant further stated in his deposition that he was very close to the operation of the motel at that time because he was operating it himself, and that thereafter he leased the premises and, except for periodical short intervals, the property had thereafter been under lease to tenants. He further admitted in his testimony that he stated in his deposition that he felt sure he could estimate the income very accurately for the period above described.

We find, however, that he "overestimated" the income for this short period of four months by approximately $2,500, and he did so under oath.

Mr. and Mrs. Martin, who were prior tenants to the plaintiff, testified that the defendant made similar representations to them concerning the income from the motel and that their experience with the actual income was very similar to the experience of the plaintiff.

The court is therefore convinced that the defendant did make the representations to the plaintiff as to the amount of income which had been earned by the motel.

At the time the defendant's deposition was taken he was not aware that the sales tax reports could be subpoened from the comptroller's office to prove or disprove his statements made in his deposition with reference to the motel's income. Records which were subpoened and which were testified to in the record concerning the actual income from the motel, as reflected from the sales tax reports to the comptroller's office, clearly demonstrate that the income from the motel over a twelve month period approximated not $18,000 for the year—but approximately $12,000.

The court must therefore definitely conclude that the defendant's representations were false. These statements were representations as to actual facts, and such facts certainly are material in a matter of this kind. When a person is leasing income producing property the amount of income is undoubtedly one of the most, if not the most, important factor to be considered.

The court is also convinced that the defendant knew that these statements were false and that he made the statements for the purpose of inducing plaintiff to enter into the lease. The testimony showed that from 1952 to 1957 there had been a parade of tenants who had been unable to keep the premises for longer than 8 to 13 months. Some of these tenants surrendered what they had thought were equities in furniture, upon which they had made very substantial payments to the defendant, others made substantial advance payments in rent, all of which they voluntarily gave up to be released from their leases—so that the defendant certainly knew at the time he leased the property to the plaintiff, not only that the property had not produced $18,000 in income, but in addition that previous tenants had lost large sums of money in attempting to pay him the rental required.

This case does not involve a *failure to disclose facts,* but involves a situation where *false statements as to material facts* were made. A party in making representations as to material facts must be careful that any statements he makes are true.

The court is mindful of the many cases coming from the appellate courts in Florida which hold that in measuring the right to rely upon representations every person must use reasonable dili-

gence for his own protection and that under any standard of conduct and in the absence of accompanying actual deception, artifice or misconduct, it is well settled that where the means of knowledge are at hand and are equally available to both the parties and the subject matter is equally open to their inspection, if one of them does not avail himself of those means and opportunities he will not be heard to say that he was deceived by the other's misrepresentations.

However, in this case the defendant not only made the false statements, but he went on to say that the books and records of the motel's operation had been removed by the prior tenants, and that he did not know their whereabouts.

The plaintiff was a complete stranger in Daytona Beach at the time of the transaction.

As testified by an agent of the comptroller's office, sales tax records are not available to any person other than the person making the return, except upon subpoena. The defendant, therefore, by telling plaintiff that the books and records had been removed by the prior tenants and were not available to prove or disprove what he said, placed the plaintiff in a position where he had no reasonable means or opportunity to inquire into the truth of the representations made by the defendant. It further appears from the evidence that defendant knew of the whereabouts of the immediately prior tenants.

If defendant had merely falsely represented to plaintiff that the income of the prior tenants exceeded $18,000 and had stopped there, and if then the plaintiff had made no investigation, it could well be said that plaintiff did not use reasonable diligence to protect himself. However, when defendant not only made the false representations as to the income of the motel, but went further and said that the books and records could not be examined by plaintiff because the prior tenants had removed the books and records and that the tenants' whereabouts was unknown to him, by such latter statement, which was false, he precluded the plaintiff from reasonably making any further investigation as to the truth of these statements. The true nature of the representations, under these circumstances, was not capable of being ascertained by the exercise of reasonable effort on the part of the plaintiff. The parties did not have equal means of ascertaining the true facts.

Under all of the circumstances in this case, the court finds that the plaintiff had a right to rely on the statements of the defendant.

The court therefore concludes that this case does not come within the rulings in cases such as McDonald v. Rose (Fla.), 50 So. 2d 878, where it was alleged that the vendors made false representations

that the premises had been fully occupied from the time of construction to the time of sale. In that case the vendees had occupied the premises approximately one week prior to the closing of the transaction and had inspected the property some sixty days prior thereto, and the court there held that they could certainly see that certain apartments were vacant during this period of time, and that since that was the case it neutralized the representations made by the vendors that the premises had been fully occupied. In that case also certain alleged representations were made concerning the furniture contained in one apartment, and that the apartments were located on a bathing beach rather than a muddy bayou. All of these facts of course could have been easily ascertained by merely looking.

Neither is this case similar to Greenberg v. Berger (Fla.), 46 So. 2d 609, which involved alleged false representations as to the amount of money allowed to be collected from certain apartments under OPA rent control. The court there said that all the plaintiff had to do was to go to the OPA office and inquire to ascertain what the rent ceiling was, and that the defendant had not utilized the reasonable means at his command.

Neither is it similar to Davis v. Dunn (Fla.), 58 So. 2d 539, where a rescission of a mortgage was requested because of misrepresentations as to termite infestation. The court there held that since the plaintiff was not denied the right of inspection he could very easily have found out whether the property was infested with termites.

Neither is it similar to Peacock Hotel v. Shipman (Fla.), 138 So. 44, where the alleged misrepresentations involved the number of revenue producing rooms the hotel contained, the state of repair of the rooms, etc. Obviously these matters could readily have been settled by an inspection.

It is clear from the testimony that the plaintiff *relied* on the false representations of the defendant, and was damaged thereby at least to the extent of $3,300—the prepaid rent.

There was some delay in instituting this suit for rescission but that is well explained in the record, as the rental of motel units in the Daytona Beach area is largely seasonal (February, March, April, June, July and August being the big rental months) and the plaintiff was not made aware of the fraud until so informed by the prior tenants, who, it appears, made some effort to look him up to tell him of the true situation. This occurred early in March, and this suit was instituted shortly thereafter.

This court does not believe that the defendant had a right to make false representations as to material facts and to go further and make statements which practically precluded the plaintiff from making an investigation as to the truth or falsity of those representations, and then say in this proceeding that plaintiff might have in some way (not explained to the court) been able to ascertain that defendant was speaking falsely, or that plaintiff should not have believed the defendant, and that therefore the defendant should be allowed to keep the fruits of his perfidy.

The true facts under the circumstances of this case could not have been ascertained by the plaintiff by reasonable effort and diligence—the defendant should therefore disgorge his ill-gotten gains.

It is ordered, adjudged and decreed that the equities of this cause are with the plaintiff and against the defendant, and that the lease entered into by the parties hereto on October 25, 1957, covering the premises at 2420 South Atlantic Avenue, Daytona Beach, known as the "Cottage Colony Motel and Apartments," is hereby rescinded.

It is further ordered, adjudged and decreed that the plaintiff do have and recover from the defendant the sum of $3,300, being the amount of prepaid rent, and the costs of this suit herein taxed at $58.90, and the plaintiff, B. A. Schulz, is granted a judgment against the defendant, O. B. Linkous, in the total sum of $3,358.90, for all of which let execution issue as at law.