185 So.2d 710 (1966)
Joseph TONKOVICH and Albina A. Tonkovich, His Wife, Appellants,
v.
SOUTH FLORIDA CITRUS INDUSTRIES, INC., a Florida Corporation, Appellee.
No. 5697.
District Court of Appeal of Florida. Second District.
April 20, 1966.
Rehearing Denied May 18, 1966.
*711 Elwood P. Safrom, Punta Gorda, for appellants.
Herman T. Isis, Coral Gables, for appellee.
SHANNON, Acting Chief Judge.
This is an appeal from a summary final decree in favor of the plaintiff. The defendants, a husband and wife, who were unsuccessful on their counterclaim, are the appellants.
The appellee sued to foreclose a statutory lien for the value of labor and materials furnished to certain grove lands, owned by the appellants. An answer and counterclaim were filed by the appellants, alleging that the lands in question had been sold to them by the appellee-corporation, that the appellee had induced the sale by misrepresenting the condition of the citrus trees on the lands, that the appellants relied on the representations to their detriment, and praying for the court to rescind the sale. Upon the filing of depositions and interrogatories, the court granted the corporation's motion for a summary final decree, awarded judgment for the value of labor and materials furnished, and dismissed the defendants' counterclaim. On appeal the appellants contend that it was error to summarily dismiss the counterclaim.
From the depositions and answers to interrogatories the following facts appear. The appellants, residents of St. Louis, Missouri, answered an advertisement in a St. Louis newspaper regarding the sale of citrus lands in Florida. A representative of the appellee-corporation called upon the appellants in their home on February 10, 1962, and during that visit the parties contracted for the sale of ten acres of citrus land. The contract, which provided that a final decision would be made upon inspection by the appellants, described the property according to numbered tracts on an unrecorded plat. On July 24, 1962, the appellants came to Florida, were flown from Fort Myers by a corporation plane, driven to a grove site, and shown a parcel of land containing orange trees. It was represented to appellants by a corporation salesman that this parcel was the one described in the contract for sale. After an inspection of the grove site the purchase was consummated. About six months later a sales representative from the appellee-corporation visited the appellants in their St. Louis home and offered five additional acres of grove lands for sale, which five acres were represented to be contiguous and similar to the ten acres already purchased. This land, described in the sales contract by tract number, was purchased by the appellants on February 5, 1963. In June, 1963, the appellant, Mr. Tonkovich, during a visit to Florida, went to his grove site and discovered that the land, which he had been told was his grove, did not belong to him. He was informed that some other fifteen acre tract was the one that he had purchased. Although not altogether clear, it appears that the trees on the fifteen acres owned by the appellants are considerably smaller than those on the acreage shown to them by the appellee. Upon learning of this discrepancy, the appellants contacted a representative of the appellee and sought to have *712 their money refunded. The record does not disclose the result of this request. Also, it appears that the appellants employed counsel and there was some correspondence exchange
On February 13, 1964, the appellee filed this suit, seeking a lien for various sums due under maintenance contracts on the groves sold. The appellants filed an answer and counterclaim stating that they were the victims of fraud and seeking rescission of the sale. In reply to the counterclaim the appellee denied the material allegations and set forth the legal description of the property concerned, which purported to correspond to the tract numbers on the contracts, and further alleged that the appellants had not been damaged; that the appellants were guilty of negligence; that the contracts differed materially from the allegations of the counterclaim; that the appellants waived their right to rescission; and that they had ratified the contract. The chancellor dismissed the counterclaim, and this appeal ensued.
The gist of the issue presented here is concisely stated in the appellee's brief:
"The vendees under a contract for the purchase of real property are not justified to rely upon oral statements of the seller which are contrary to statements in the contract."
In support of this point, the appellee relies on two portions of the transactions. (1) The contracts for sale involving both the ten and five acre tracts contained this wording, "* * * ____ acres, more or less, to be improved with seventy trees per acre." (Emphasis added.) And (2) The contracts for sale and deeds both set forth correct legal descriptions of the lands. In light of these facts, appellee contends that there was no right to rely on the seller's oral representations that there were already trees on the land, as well as the location of the groves purportedly shown.
Whatever may be said for the legal support of this position, we find ourselves highly disinclined to favor any theory so blatantly unconscionable. Realizing, however, that a court should not decide a legal issue on the basis of a moralistic preference, we have undertaken search of the applicable law.
It is generally understood that a tort action for fraud or deceit will lie for intentional misrepresentation. The essential elements of fraud are: 1) a false statement of fact; 2) known by the defendant to be fraudulent at the time it was made; 3) made for the purpose of inducing the plaintiff to act in reliance thereon; 4) action by the plaintiff in reliance on the correctness of the representation; and 5) resulting damage to the plaintiff. Beagle v. Bagwell, Fla.App. 1964, 169 So.2d 43; Prosser, Torts, Sec. 86 (2d Ed. 1955); and 2 Pomeroy, Equity Jurisprudence, Sec. 872, et seq., (1905).
What we have at issue here comes under the fourth category, that is, action in reliance on a material representation. The appellee contends the reliance was not justified.
In attempting to maintain logical consistency in legal theory, we note that contributory negligence cannot be a total defense to an action for deceit, which is an intentional tort. Prosser, supra, Sec. 89, p. 551; Vol. 1 Harper and James, Torts, Sec. 7.12 (1956); and Clark, Equity, Sec. 306 (1954). This is important because a mere showing of some slight negligence or inattention on the part of a plaintiff will not preclude a recovery in an action for deceit, as it would in a negligence action. Therefore, we must examine the conduct of the appellants to doctrine if, according to the record, they did rely on the appellee's misrepresentations, and if such reliance, under all the facts and circumstances, was justified. If we are unable to answer these questions adverse to the appellants as a matter of law, then the summary judgment must be reversed.
*713 Generally, the misrepresentation, to be actionable, must be one of fact rather than of opinion, e.g., Prosser, supra, Sec. 90. We illustrate the nature of the misrepresentations here by the following excerpts from the record. The deposition of Mr. Tonkovich states, in part:
"Q. Did you discuss the provisions of this contract with Mr. Weber [seller's representative] before you signed it, Mr. Tonkovich ? Did you have any discussion with Mr. Weber about this?
"A. Yes.
* * * * * *
"Q. What did he tell you about the groves?
"A. He told me the trees on the grove was three years old, two years in the nursery and one year in the grove.
"Q. He said they were planted already?
"A. Right.
"Q. Well, now, did you read this part of the contract that says: `Tract 45 and 46-C of the Tropical River Groves * * * consisting of ten acres more or less, to be improved with seventy trees per acre'?
"A. Yes.
"Q. What did he say about that?
"A. He said it was already improved."
The appellants' answers to interrogatories state, in part:
"* * * On July 24, 1962 we visited the grove and were shown a planted grove which we were told by Mr. Dobias as being the same grove on which we had paid an option.
* * * * * *
"* * * [W]e were assured by Mr. Louis Cunningham that the five acres grove was planted and the size of the trees were the same as those on the grove which we visited on July 24, 1962.
* * * * * *
"The lands were not planted with orange trees when we purchased them as represented. Had we known the orange trees were not on these lands (and the pictures we had indicated there were orange trees) we would not have purchased any of the lands. * * * "
Thus we have clearly stated the factual misrepresentations.
Appellee relies heavily on several principles enunciated by the Florida Supreme Court, which, it is urged, stand for the proposition that where both parties have equal access to the means of verifying the representations, and when the defendant has taken no action which would preclude an independent examination by the plaintiff, that reliance by the plaintiff is unjustified. Davis v. Dunn, Fla. 1952, 58 So.2d 539; Greenberg v. Berger, Fla. 1950, 46 So.2d 609. Under these conditions, appellee contends that the appellants are trapped by the principles of caveat emptor.
In Davis v. Dunn, supra, the court held that the purchasers of a dwelling were not justified in relying on the seller's representations that the house had been recently inspected for termites and none found, because there was no evidence that the purchasers had been denied the right to make an inspection of the premises. The court noted that the purchaser, Davis,
"* * * testified that it was an ordinary arms-length transaction and that he was not high-pressured; that he knew it was an old house and that he had been told to be on the `look-out' for termites; that he visited the house three or four times between the time he signed the contract of purchase and the time the deal was closed and that Mrs. Dunn had given him the key and that he had complete freedom to inspect as much as he wanted and that he `could have gone in and torn it up' and that he could have *714 had a termite expert make an inspection for termites." (Emphasis added.) 58 So.2d at 540.
The court in Davis relied almost entirely on Greenberg v. Berger, supra, quoting the following passage from the opinion:
"It is true that the law recognizes the right of a trader or dealer `to cry his own wares', but these statements are but mere expressions of opinion and the purchaser is not relieved of the duty and responsibility of an honest and thorough investigation as to the truth of the statements of the trader or dealer." (Emphasis added.) 46 So.2d at 610.
Thus, it appears that the court was equating the statements regarding absence of termites with a mere opinion, and if this be true, Davis is not applicable to the instant case in which the representations are of a factual nature. Cf. Star Apartment, Inc. v. Martin, 204 F.2d 829 (5th Cir.1953). But even conceding that in 1952 the Supreme Court was willing to adopt a stringent rule that placed the risk on the purchaser, we believe the effect of this decision has been softened by later cases.
In Ramel v. Chasebrook Const. Co., Fla. App. 1962, 135 So.2d 876, this court reversed the dismissal of an action for fraud and deceit, where the defendants, who held themselves out as land developers, stated to the plaintiffs that the house was well constructed, while at the time knowing that the house, patio and pool were erected on a dubious foundation of muck unsupported by pilings or other reinforcement. The court laid great stress upon the defects being buried below the surface of the land, not apparently visible or discoverable without excavation. The Davis case was not mentioned in either the majority or dissenting opinions in Ramel.
In Beagle v. Bagwell, Fla.App. 1964, 169 So.2d 43, the Third District was faced with a factual situation analogous to Davis v. Dunn, but rejected that case in favor of the rationale expressed by the Second District in Ramel. The complaint in Beagle alleged that the defendant-seller, preliminary to offering her residence for sale, had the property inspected for termites and was informed that the building was almost totally infested with them. It was further alleged that the defendant employed a carpenter to patch and cover up the deterioration in the building which had occurred, and that the defendant offered the property for sale to plaintiff upon the positive representation that the dwelling was sound and free from termites; and that a reasonable and ordinary inspection of the house by plaintiff failed to reveal the existence of termite damage because of its concealment from ordinary inspection by defendant. In reversing the dismissal of the complaint, the court distinguished the Davis case as follows:
"The case sub judice as alleged in the amended complaint is distinguishable from Davis v. Dunn, supra, in that here plaintiff allegedly made a reasonable and ordinary inspection of the property for termite damage or infestation, and did not rely wholly upon the fraudulent representations of defendant that the house was free from such defects. The complaint alleges that because of the actual deception, artifice, and misconduct on the part of defendant, the evidence of termite infestation and damage was concealed in such way as to be incapable of detection from a reasonable and ordinary inspection of the house." 169 So.2d at 46.
The court then cited and quoted from the Ramel case. The defendant in Beagle petitioned for certiorari, but the Supreme Court denied the writ without opinion. 174 So.2d 32.
The Ramel and Beagle cases suggest a limitation, apparently sanctioned by the Supreme Court, on the Davis holding, which is that a reasonable inspection will excuse a purchaser's failure to detect hidden defects known to, and concealed by, the seller. This, in turn, is in accord with *715 the modern view of circumscribing the effect of caveat emptor. See Bearman, Caveat Emptor in Sales of Realty  Recent Assaults Upon the Rule, 14 Vand.L.Rev. 541, 561; Restatement of Contracts, Sec. 471. In addition, it accords with an earlier case in which the Florida Supreme Court held that reasonable inspection did not include a search of the public records. Morris v. Ingraffia, 1944, 154 Fla. 432, 18 So.2d 1.
We find a strong analogy in the facts of the instant case to the principles of law discussed above. It might well be that appellants here would not have been justified in relying solely on the statements of appellee's salesman, regarding the existence of the trees, when the contract was signed. However, before purchasing the original ten acres, the appellants actually inspected the land, saw trees growing thereon, and were told that this was to be their grove. Likewise, the second tract of five acres was represented to have been contiguous to the ten acres, and to have trees in a similar condition. Having made a visual inspection, the appellants were unaware of the fraudulent concealment by the appellee, and could only have discovered the fraud by having a survey taken of the property described in the deed.
In light of the Ramel and Beagle cases, we do not believe the Davis case required the appellants to have gone this far in order to discover the purposely concealed discrepancy. See Regnvall v. Sayle, Fla. 1950, 45 So.2d 674.
This viewpoint is in accord with what we believe to be the view in other jurisdictions which have had presented factual situations similar to the one now before us. Absent any Florida case directly in point, we may look elsewhere for persuasive authority.
In Pace v. Parrish, 1952, 122 Utah 141, 247 P.2d 273, the court held that the duty of a vendee to use reasonable care did not require that he have a survey conducted, when the vendor represented that a parcel was included in the tract to be purchased, when it actually was not included, there being nothing in the appearance of the land to put the vendee on notice that the tract did not encompass all the land as represented by the vendor.
The Supreme Court of Minnesota affirmed the rescission of a contract for the exchange of land based upon the defendant's misrepresentation of the location of the house and lot. Nelson v. Carlson, 54 Minn. 90, 55 N.W. 821 (1893). One piece of property was pointed out to plaintiff as that to be conveyed, while the property actually conveyed to him was an entirely different house and lot.
Rummer v. Throop, 38 Wash.2d 624, 231 P.2d 313 (1951), was an action by a purchaser to rescind a contract for the purchase of a farm, on grounds that the vendor had falsely represented that the farm was free from weeds and that magnesium dust from a nearby plant had no effect on the farmland. The deed under which the vendor held title to the property contained a covenant which would put a purchaser on notice of the harmful effects of the magnesium dust, and these "restrictions" were expressly referred to in the contract for sale sought to be rescinded. The lower court admitted evidence of the damage caused to the farm by the dust subsequent to the purchaser's taking possession, and rescinded the contract. On appeal the vendor argued that the evidence was inadmissible because the purchaser had both actual and constructive knowledge of the dust condition and therefore had no right to rely upon the vendor's oral representations. The Washington Supreme Court rejected this argument and affirmed, stating:
"Where a representee makes only a partial investigation, and relies in part upon the representations of the adverse party, and is deceived by such representations, the authorities agree that he has a right to rely, and may maintain an action for such deceit. * * *" 231 P.2d at 319.
*716 In Judy v. Jester, 53 Ind. App. 74, 100 N.E. 15 (1912), it was held that where the vendor had shown the vendee a farm in good condition, then sold him another farm not nearly as good, but represented to be of the same quality, that the purchaser was entitled to rely on the vendor's representations, especially since the purchaser was a resident of another locale, had only a brief visit to the site, and had no convenient means by which he could learn the facts for himself.
A California court was faced with the question of rescission of a sale of an orchard in Stirnus v. Adams, 1920, 50 Cal. App. 730, 195 P. 955. It was held in that case that:
"* * * The statement that the age of the orchard was only 15 years, when it was in fact between 25 and 30 years old, and that there was nothing wrong with it, when, on the contrary, it was in the diseased and infected and run-down condition disclosed by the evidence and findings, each, under the circumstances of this case, constituted misstatements of material facts sufficient of themselves to constitute ground for the rescission of the contract. Davis v. Butler, 154 Cal. 623, 98 Pac. 1047.
* * * * * *
"The finding of the court that the plaintiff relied solely upon the statements of the defendants as to the condition of the orchard is amply sustained by the record. And while it is true that the plaintiff visited the orchard on several occasions previous to executing the agreement of purchase, he was, on account of his entire lack of experience in horticulture, known to defendant Lyon, unable to judge for himself, as to its real condition, or to see the things that actually condemned it for his purposes. He was justified, under the circumstances disclosed by the record, in relying upon the statements of material facts already referred to, and since the defendants were unable to make their representations good, they should not, in equity and good conscience, be permitted to retain the moneys which have come into their hands by reason of their misconduct."
It is clear to us that the facts in the instant case fall within the rules of justifiable reliance set out in the decisions noted above. There were allegedly false representations as to both the location and the condition of the land, which, in light of the oral representations by the seller's agents, could have only been discovered by taking a survey. We have found no decision, either in Florida or elsewhere, that places this burden upon a purchaser, once he has been shown the land by the seller. See, generally, Annot. 174 A.L.R. 1010.
It is of particular significance that this case was decided on motion for summary judgment, and we observe that the question of fraud can seldom be determined without a full explanation of the facts and circumstances incident to a complete evidentiary hearing. See Alepgo Corp. v. Pozin, Fla.App. 1959, 114 So.2d 645. Moreover, many of the Florida cases denying relief for fraud reached the appellate court after the trial judge or chancellor had found that, on the basis of the evidence presented, there was no proof of the alleged fraud. Welbourn v. Cohen, Fla.App. 1958, 104 So.2d 380; Barrett v. Quesnel, Fla. 1956, 90 So.2d 706; Brown v. Coward, Fla. 1953, 69 So.2d 174; Regnvall v. Sayle, Fla. 1951, 54 So.2d 147; and Camardella v. Courtright, 1936, 126 Fla. 536, 171 So. 225. We have also examined the case of Hall v. Duvall, 1945, 156 Fla. 542, 24 So.2d 106, a decision based on the pleadings, but find the factual situation there entirely different from that here. In Hall the alleged fraud was a misrepresentation by the purchaser as to her identity, and the court held that this did not affect the validity of the conveyance.
We are fully cognizant of having overlapped, in our discussion of the preceding *717 cases, the issues of misrepresentation as they related to both the location and the condition of the land sold. In light of the situation presented in the instant case, which is that the trees were said to be already planted when they were not and that the grove described in the deed was different from the one shown to appellants, it appears that questions of condition and location are inseparable. This is of importance because both are interwoven with another essential element of an action for fraud, which element is damages. It may be that summary judgment here was predicated upon the theory that the purchasers were unable to generate a factual dispute as to damages, or else that the undisputed facts revealed no damage. The chancellor did not state the grounds of his ruling, so we must explore the record to determine if under any theory we may sustain his decision. E.g., Escarra v. Winn-Dixie Stores, Inc., Fla. 1961, 131 So.2d 483.
The general rule as to damages in this type of case is set out in Prosser, Torts, Sec. 91 (2d Ed. 1955):
"When restitution is sought, either in equity or at law, a much more liberal policy has been adopted. Since the purpose is not to compensate the plaintiff's loss, but to restore what the defendant has received, the courts look to the inequity of allowing him to retain it, rather than to the damage which the plaintiff has sustained. It is often repeated that damage must be shown for rescission, and recovery has been denied on that basis; but the assertion is so far honored in the breach that it has little or no validity. The plaintiff will not be permitted to rescind where he has received substantially what he bargained for, or where subsequent events have made the representation good. But sufficient `damage' has been found, or dispensed with, where the plaintiff has received property of a different character or condition than he was promised, although of equal value, where the transaction proves to be less advantageous than as represented, although there is no actual loss; and where the false statement was important to the plaintiff for reasons personal to himself, not affecting any financial value or profit. It seems correct to say rather that damage is not essential to rescission, but that it is merely one factor to be considered in determining whether it is equitable to allow the transaction to stand."
This position accords with that expressed in the Restatement of Contracts, Sec. 476, Comment C. See De Funiak, Equity, Sec. 102, (2d Ed. 1956); and 1 Harper and James, Torts, Sec. 7.15 (1956).
From the record we discern sufficient fact issues as to possible damage suffered to preclude summary judgment. The deposition of Appellant Mr. Tonkovich tends to show that at the time he purchased the land there were no trees on it.
The appellee's second point in defense of the decree is that the appellants' conduct amounted to a waiver of their rights to rescind. This is an issue of fact, which is not properly resolvable on the basis of this record. The only evidence of a possible waiver is several pieces of correspondence from the appellants, which Mr. Tonkovich stated were written upon the advice of his attorney. There is also some evidence of a payment having been made at some time after the discovery of the alleged fraud, but we are unable to see how this isolated incident could be a basis for awarding summary judgment. There has not been a showing of such delay or other conduct on the part of the appellants amounting to a waiver. See 2 Pomeroy, supra, Sec. 872.
For the reasons herein expressed the summary final decree is reversed and the *718 cause remanded for further proceedings consistent with this opinion.
Reversed.
HOBSON, J., and HOBSON, T. FRANK, Sr., Associate Judge, concur.